**STATE of Missouri, Respondent,**

v.

**Richard MOZEE, Appellant.**

**No. WD 61663.**

Missouri Court of Appeals, Western District.

June 24, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 2003.

Application for Transfer Denied Aug. 26, 2003.

---

Craig A. Johnston, Columbia, MO, for appellant.

Breck K. Burgess, Assistant Attorney General, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Chief Judge.

Richard L. Mozee appeals from his conviction of one count of delivery of a controlled substance near a school, § 195.214.[1] Appellant was sentenced as a prior offender to ten years in the Missouri Department of Corrections.

Appellant does not challenge the sufficiency of the evidence to support his conviction. Viewed in the light most favorable to the judgment, the evidence presented at trial reflects the following.

On March 3, 2000, Officer James Balmer of the North Missouri Drug Task Force went with a confidential informant to the home of Paula Terrell, a known drug dealer, in Moberly, Missouri.[2] While Officer Balmer was at the residence, another individual arrived who Terrell referred to as "Lee." That individual sold Terrell some crack cocaine and informed Terrell that he would be at the car wash on Morley Street with more crack cocaine. After a while, Officer Balmer indicated to Terrell that he would like some crack cocaine and suggested that they go to the car wash and see if the individual was still there.

Officer Balmer, Terrell and the confidential informant then got into Balmer's

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

2. At that time, Office Balmer was in the midst of an extended undercover assignment.

car and drove to the car wash, which was located across the street from North Park Elementary School. When they arrived at the car wash, Officer Balmer and Terrell located "Lee" working on a black Suburban. Officer Balmer and Terrell approached Lee, and Officer Balmer stated that he wanted to buy fifty dollars' worth of crack cocaine. After Lee handed Officer Balmer a rock of crack cocaine wrapped in plastic, Officer Balmer told Lee that the rock in the plastic was only worth forty dollars. Lee agreed to that price and sold the rock of crack cocaine to Officer Balmer for that amount. Officer Balmer and Terrell got back into the car and left.

About an hour after the transaction, Officer Balmer went to the Moberly Police Department to try to identify the individual that had sold him the crack cocaine after the confidential informant was unable to provide him with a name. In the course of talking with various detectives about the individual, Appellant's name came up. Because no picture of Appellant was available at the police department, Officer Balmer contacted the Missouri State Highway Patrol to obtain a copy of the picture from his drivers' license. After a copy of that photograph was faxed to him, Officer Balmer positively identified Appellant as the man that had sold him the crack cocaine at the car wash from that photograph.

On November 12, 2001, Appellant was charged by indictment in the Circuit Court of Randolph County with one count of the class A felony of delivery of a controlled substance near a school in violation of § 558.011.1.[3] Following a change of venue, Appellant was tried by jury in the Circuit Court of Howard County on March 18, 2002, and found guilty as charged. Subse-

quently, the trial court sentenced Appellant as a prior offender to a term of ten years in the Missouri Department of Corrections. Appellant brings three points on appeal from that judgment.

In his first point, Appellant argues that the trial court abused its discretion in failing to exclude testimony from Officer Balmer that the confidential informant had made a positive identification of Appellant from a photograph at some point after Appellant had been charged. Appellant contends that the admission of this hearsay testimony was improper and violated his right to cross-examine and confront the witnesses against him under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution.

 The trial court is afforded broad discretion in assessing the admissibility of evidence, and its ruling on the admissibility of the evidence will not be interfered with on appeal absent a clear abuse of discretion. *State v. Hatch*, 54 S.W.3d 623, 631 (Mo.App. W.D.2001). Furthermore, "[w]e review trial court decisions regarding the admissibility of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Uka*, 25 S.W.3d 624, 627 (Mo.App. E.D. 2000).

At trial, Appellant stipulated that Officer Balmer had purchased crack cocaine from an individual at the car wash on the date in question and that the car wash was within 2,000 feet of a school. The theory of defense relied upon by Appellant was that Officer Balmer's identification was not reliable and that Appellant was not the individual that sold him the crack cocaine.

---

**3.** Officer Balmer testified that the twenty-month delay between the transaction at issue and the charging of Appellant was the result of the State waiting to charge Appellant until after Officer Balmer's undercover assignment in the area was completed.

Officer Balmer was the only witness to testify at Appellant's trial. During that testimony, Officer Balmer identified Appellant as the individual who had sold him the crack cocaine at the car wash. On cross-examination, Appellant's counsel attempted to impeach that testimony.

■ In the course of his cross-examination of Officer Balmer, Appellant's counsel adduced testimony from Officer Balmer that the confidential informant had not been able to provide him with the name of the individual that had sold him the drugs. The trial transcript reflects that the following exchanges subsequently occurred during Officer Balmer's re-direct testimony:

The State: At my request, and after my conversations with [Appellant's counsel] concerning the identification, did you talk to the C.I. to see if this informant would be able to identify the Defendant? In other words, after our meetings, did you meet with the C.I. as to I.D. of this Defendant?

Officer Balmer: Yes, I did.

The State: Was the C.I. able to identify the Defendant?

Appellant's attorney: Again, we would object. I have no clue what he's going to answer, but this has to do with something after the charge. I'm talking about, he talked to her or him immediately after the buy, immediately before this picture I.D., and they said, no, don't have any idea who it was.

The State: Well, that's my point, Your Honor. Back then, this C.I. said that the C.I. didn't know this person, but Paula Terrell said she knew him under

two names. Lee being one of them. And the point is—

The Court: As far as the C.I. is concerned, for the last question, that will be sustained.

Appellant's attorney: Thank you, sir.

The State: Still, our point is this, if I can make this offer.

Appellant's attorney: Judge, I would ask to approach, if he's wanting to make offers about hearsay.

The State: I'm not offering hearsay, Your Honor. This point is simply this—

The Court: Let's approach.

(Counsel approached the bench, and the following proceedings were had:)

The State: We're attacking this officer, and saying why didn't he go question the C.I., and why isn't that C.I. here I.D.ing this guy.[4] The officer did follow through. He did talk to the C.I. The C.I. still, even to date, did not identify this guy.

The Court: Well, that was brought out earlier, that the C.I. could not identify this guy. So that was brought out earlier, that the C.I. could not identify.

The State: At the time, but he has just cross-examined him on why he hasn't gone back and checked her again, since she is not working that area.

The Court: Well, that's as far—if you want to ask the reason that the C.I. could not identify, but let's—

Appellant's attorney: Okay. I just don't have any idea what the answer would be.

---

4. No such questions were asked of Officer Balmer on direct or cross-examination. Appellant did ask Officer Balmer the identity of the confidential informant after Officer Balmer testified that he was no longer undercover or working in the area, the State objected, and the Court sustained that objection. Appellant did not question Officer Balmer about any further questioning of the informant or why the confidential informant was not testifying.

The State: I'm giving him that answer, and I mean if he's going to argue it to the jury, I think they have a right to know. He can't leave them speculating while I've got him right there.

The Court: You can ask that question.

Appellant's attorney: I would agree with the Prosecutor. I would stipulate that the answer would be that the C.I. has no clue who it was.

The Court: We'll let him ask the question.

The State: Well, I just don't want any open ends.

The Court: Very well.

(The proceedings returned to open court.)

The State: Okay. Again, the point being, you did question the C.I. at my request, to see if that C.I. was now able to identify the Defendant?

Officer Balmer: In what—by name?

The State: Or in any regard.

Officer Balmer: Yes.

The State: Was that C.I. able to I.D. him? Was the C.I.—

Officer Balmer: By the photo. She recognized him from a photo.

The State: She did? When did that happen?

Appellant's attorney: Objection. May we approach?

(Counsel approached the bench, and the following proceedings were had:)

The Court: Now, I thought the question was, after you cross-examined, could the C.I. identify the man. At the time, the answer on direct—

The State: Was no.

The Court: Was no. And you showed him something, and he was going to just ask, could they identify him, and the answer was supposed to be no.

The State: It was.

Appellant's counsel: Now what we've done is, we've had an objection to the testimony of this C.I. They're hiding it, it's hearsay, the limitation, the whole bit. And he promised us that the answer was no. And the Court said okay, give him that, go ahead and answer. He said, oh, yeah, they identified him from the photo.

The State: I was at the end of the line of questioning.

Appellant's counsel: Defendant requests a mistrial.

The Court: Well, that request is denied.

Appellant contends that Officer Balmer's testimony that the confidential informant had identified him as the drug dealer was inadmissible hearsay evidence that should have been excluded by the trial court. "A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted." *State v. Shaw,* 14 S.W.3d 77, 81 (Mo.App. E.D.1999). "Hearsay evidence is objectionable because the person who makes the offered statement is not under oath and is not subject to cross-examination." *State v. Bowens,* 964 S.W.2d 232, 240 (Mo.App. E.D.1998).

"[A] criminal defendant is constitutionally guaranteed the right under the Sixth Amendment to confront the witnesses against him or her and to have the opportunity for effective cross examination of any witnesses who appear and testify against him or her." [5]

---

**5.** "The Sixth Amendment of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ... and to have the [a]ssistance of [c]ounsel....'" *State v. Glaese,* 956 S.W.2d

*State v. Glaese,* 956 S.W.2d 926, 930 (Mo.App. S.D.1997). As a result, "[t]he admission of a hearsay statement against a criminal defendant violates his or her Sixth Amendment right to confront adverse witnesses unless the statement falls within a firmly rooted exception to the hearsay rule or it contains particularized guarantees of trustworthiness." *Shaw,* 14 S.W.3d at 81 (citing *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

Officer Balmer's testimony described out-of-court statements made by an un-identified third party who did not testify at trial, and the only possible purpose for that testimony was to serve as proof of the matter asserted. Accordingly, Officer Balmer's testimony related to the confidential informant's identification of Appellant was indisputably hearsay. *State v. Jones,* 583 S.W.2d 561, 563 (Mo.App. E.D.1979); *State v. Leipus,* 675 S.W.2d 896, 900 (Mo.App. E.D.1984); *See also State v. Hall,* 508 S.W.2d 200, 207–08 (Mo.App. W.D.1974) (noting that officer's testimony that an eye-witness, who did not testify at trial, had told him that the defendant had "used a .38 special to hold up the restaurant" was an example of "the rankest kind of hearsay" because none of the safeguards of the Sixth Amendment were afforded the defendant).[6]

▪ In responding to Appellant's argument, the State's only contention is that Officer Balmer's hearsay testimony regarding the confidential informant's identification of Appellant was admissible under the doctrine of curative admissibility.[7] Under that doctrine, where one party has introduced inadmissible evidence at trial, the opposing party may be allowed to introduce otherwise inadmissible evidence of its own to rebut or explain negative inferences raised by the first party's evidence. *State v. Middleton,* 998 S.W.2d 520, 528 (Mo. banc 1999); *State v. Shurn,* 866 S.W.2d 447, 458 (Mo. banc 1993).

The State bases its argument on the fact that Appellant elicited testimony from Officer Balmer that the confidential informant was unable to tell him the drug dealer's name immediately after the transaction. The State claims that the testimony elicited by Appellant was inadmissible hearsay and that the State was therefore

---

926, 930 (Mo.App. S.D.1997). " 'The Sixth Amendment is held to be applicable to all criminal proceedings in the state courts by reason of the application of the Fourteenth Amendment of the Constitution of the United States prohibiting the deprivation of life or liberty without "due process of law." ' " *Id.* (quoting *State v. Jackson,* 495 S.W.2d 80, 83 (Mo.App. W.D.1973)). "Its counter-part in the Constitution of Missouri, 1945, as amended, provides that 'in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel ... to meet the witnesses against him face to face.' " *Id.* (quoting *Mo. Const. Art. I, § 18(a)).*

6. Obviously, the facts of this case differ significantly from the situation addressed in *State v. Harris,* 711 S.W.2d 881 (Mo. banc 1986). In *Harris,* the Missouri Supreme Court held that testimony by a police officer or other similar witness to an extrajudicial identification as to another person's identification of the defendant would not be deemed presumptively inadmissible where the individual that identified the defendant and the corroborating witness both testify at trial and are both subject to cross-examination because the availability of the identifying witness for cross-examination eliminates the principle dangers of hearsay testimony. *Id.* at 884. In the case at bar, the individual purportedly making the identification of the defendant did not testify at trial and was not available for cross-examination. In fact, the identity of that individual was kept secret from the both defendant and the jury. Accordingly, *Harris* and its progeny are readily distinguishable from this case, and the reasoning expressed in those cases has no application herein.

7. This theory was not raised by the State at trial.

entitled to introduce evidence of the confidential informant's subsequent photographic identification of Appellant to rebut the inferences raised by that testimony under the curative admissibility doctrine. The State's argument is entirely without merit.

■ The "curative admissibility doctrine" only applies after one party introduces inadmissible evidence. *Middleton*, 998 S.W.2d at 528. "A party may not ... introduce inadmissible evidence to rebut inferences raised by the introduction of admissible evidence during cross-examination." *Id.* Officer Balmer's testimony related to the confidential informant's inability to name the drug dealer was not inadmissible. That testimony, while hearsay, was admissible to explain Officer Balmer's subsequent conduct in going to the police department and attempting to ascertain the drug dealer's name by describing him to other detectives and looking at random mug shots. *Masden v. State*, 62 S.W.3d 661, 671 (Mo.App. W.D.2001); *State v. Davenport*, 924 S.W.2d 6, 10 (Mo.App. E.D.1996).

■ Moreover, a party seeking to admit otherwise inadmissible evidence under the curative admissibility doctrine is limited to admitting evidence that rebuts or explains negative inferences arising from the inadmissible evidence previously introduced by the other party. *Shurn*, 866 S.W.2d at 458. The testimony about the confidential informant's photographic identification of Appellant simply does not rebut, in any way, the testimony elicited by Appellant that the confidential informant did not know who the drug dealer was at the time the drug transaction occurred. Likewise, it does not serve to rebut or explain any inference arising from that prior testimony. The State could not properly have been allowed to introduce

Officer Balmer's testimony under the curative admissibility doctrine.

Because the testimony adduced by the State was hearsay and no established exception to the hearsay rule applied to render it admissible, the trial court clearly erred in allowing that testimony into evidence. Having determined that the trial court erred in admitting Officer Balmer's testimony, we must next consider whether this error was sufficiently prejudicial to Appellant to warrant reversal of his conviction. As noted *supra*, we will only reverse the trial court's decision on an evidentiary matter if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Edwards*, 31 S.W.3d 73, 77 (Mo.App. W.D.2000).

■ In this regard, the State argues, in cursory fashion, that any error in admitting Officer Balmer's testimony about the photographic identification could not have been prejudicial to Appellant.[8] The State claims that the testimony of Officer Balmer identifying Appellant as the individual who sold him the drugs and testimony that he had identified Appellant from a faxed copy of his drivers' license photograph within an hour and a half of the transaction constituted such strong evidence of Appellant's guilt that he could not possibly have been prejudiced by testimony that another anonymous individual had also identified Appellant from a photograph.

A similar situation arose in *State v. Kirkland*, 471 S.W.2d 191 (Mo.1971). In that case, the Missouri Supreme Court reversed the conviction of a defendant for the robbery of a cab driver where a police officer was allowed to testify that a third party had identified the defendant as having gotten into a cab at the address the cab driver claimed to have picked up his assailant. *Id.* at 193. The Court noted that the admission of that evidence served

---

8. The State's entire argument on the issue was one paragraph in length.

to deny Appellant his right to cross-examine witnesses against him as secured by the confrontation clause and found the admission of the officer's testimony to be prejudicial error despite the fact that the record contained evidence that the victim had positively identified the defendant as his attacker in a lineup within hours of the robbery because the third party identification was "powerful corroborating evidence of identification." *Id.*

■ Similarly, in the case at bar, the State's case against Appellant hinged entirely upon the testimony of Officer Balmer and the reliability of his identification of Appellant as the drug dealer.[9] Appellant's theory of defense was that Officer Balmer's identification was not reliable and that he had misidentified Appellant. On cross-examination, Appellant's attorney questioned Officer Balmer in a manner meant to call into question the reliability of his identification of Appellant. Officer Balmer was then allowed on re-direct examination to bolster his own identification of Appellant as the drug dealer through hearsay testimony about the confidential informant's identification of Appellant. This hearsay testimony went directly to the issue of Appellant's guilt.

■ Appellant attempted to obtain the identity of the confidential informant both prior to trial and during the cross-examination of Officer Balmer. The trial court sustained the State's objections to questions related to the identity of the informant. Had the State produced the confidential informant, the informant would have had to testify under oath and been subject to cross-examination by Appellant regarding the reliability of her identification of Appellant. *Jones,* 583 S.W.2d at 563. " '[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' " *Glaese,* 956 S.W.2d at 933.

Through the admission of Officer Balmer's hearsay testimony, the State was allowed to admit evidence of a second identification of Appellant without affording Appellant the opportunity to confront and cross-examine the second identifying witness, and Appellant was, thereby, denied a fair trial. *See Kirkland,* 471 S.W.2d at 193; *See also State v. Reynolds,* 723 S.W.2d 400, 404 (Mo.App. W.D.1986); *State v. Callahan,* 641 S.W.2d 186, 191 (Mo.App. W.D.1982). Accordingly, the judgment of the trial court must be reversed, and the cause remanded for a new trial.[10]

All concur.

---

9. "Where a case stands or falls on the jury's belief or disbelief of essentially one witness, that witness' credibility ... must be subject to close scrutiny." *State v. Joiner,* 823 S.W.2d 50, 55 (Mo.App. E.D.1991).

10. Having reached this conclusion, we need not address Appellant's remaining issues on appeal.