**STATE of Missouri, Respondent,**

v.

**Orlando HADLEY, Appellant.**

**No. ED 96204.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 24, 2012.

Kent Kenzel, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., James B. Farnsworth, Jefferson City, MO, for respondent.

KENNETH M. ROMINES, J.

### Facts and Procedural History

Appellant Orlando Hadley appeals his conviction by a jury for four counts of recklessly exposing another person, M.G., to HIV in violation of Section 191.677.[1]

---

1. In relevant part Mo.Rev.Stat. § 191.677 (2006) provides:

1. It shall be unlawful for any individual knowingly infected with HIV to ...:

(2) Act in a reckless manner by exposing another person to HIV without the knowledge and consent of that person to be exposed to HIV, in one of the following manners:

The jury also recommended that Hadley be sentenced to fifteen years on each of the counts. The trial court sentenced Hadley to consecutive terms of fifteen years imprisonment for Counts 1 and 2. The trial court also sentenced Hadley to fifteen years imprisonment on Counts 3 and 4, to be served concurrently with Counts 1 and Two. Hadley received a total of thirty years imprisonment. The trial court entered its final judgment on 13 January 2011. Aggrieved, Hadley now appeals. Facts, as needed, will be provided in the discussion section.

## Discussion

### Points I & II.

Hadley's raises three arguments in his first two points on appeal. He argues that the trial court improperly allowed the State to introduce Exhibit 3, and others to

(a) Through contact with blood, semen or vaginal secretions in the course of oral, anal or vaginal sexual intercourse; or ... (c) By biting another person or purposely acting in any other manner which causes the HIV-infected person's semen, vaginal secretions, or blood to come into contact with the mucous membranes or nonintact skin of another person.

Evidence that a person has acted recklessly in creating a risk of infecting another individual with HIV shall include, but is not limited to, the following:

a. The HIV-infected person knew of such infection before engaging in sexual activity with another person, ... or purposely causing his or her semen ... to come into contact with the mucous membranes or nonintact skin of another person, and such other person is unaware of the HIV-infected person's condition or does not consent to contact with blood, semen or vaginal fluid in the course of such activities;

b. The HIV-infected person has subsequently been infected with and tested positive to primary and secondary syphilis, or gonorrhea, or chlamydia; or

c. Another person provides evidence of sexual contact with the HIV-infected person after a diagnosis of an HIV status.

testify as to its contents, because it (1) contained improper hearsay, (2) violated his right to confrontation, and (3) contained privileged, confidential communications which occurred during the course of his HIV testing and treatment. For the following reasons, these arguments do not provide grounds for relief.

The trial court has broad discretion to determine the admissibility of evidence, and we will not reverse the court's ruling absent an abuse of discretion. *State v. Mozee*, 112 S.W.3d 102, 105 (Mo.App. W.D. 2003). The trial court abuses its discretion "when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration." *State v. McGowan*, 184 S.W.3d 607, 610 (Mo. App. E.D.2006). We review the trial

2. Violation of the provisions of subdivision (1) or (2) of subsection 1 of this section is a class B felony unless the victim contracts HIV from the contact in which case it is a class A felony.

3. The department of health and senior services or local law enforcement agency, victim or others may file a complaint with the prosecuting attorney or circuit attorney of a court of competent jurisdiction alleging that a person has violated a provision of subsection 1 of this section. The department of health and senior services shall assist the prosecutor or circuit attorney in preparing such case, and upon request, turn over to peace officers, police officers, the prosecuting attorney or circuit attorney, or the attorney general records concerning that person's HIV-infected status, testing information, counseling received, and the identity and available contact information for individuals with whom that person had sexual intercourse or deviate sexual intercourse and those individuals' test results.

4. The use of condoms is not a defense to a violation of paragraph (a) of subdivision (2) of subsection 1 of this section.

court's admission or exclusion of evidence for prejudice and not mere error, and will affirm the court's ruling unless it was so prejudicial that it deprived the defendant of a fair trial. *Mozee,* 112 S.W.3d at 105.

### i. Hearsay

■ Exhibit 3 is twenty-two pages of Hadley's medical records from the Missouri Department of Health and Senior Services, Bureau of HIV, STD and Hepatitis. During *the guilt phase of the trial,* the trial court admitted Exhibit 3 into evidence. The jury never examined it, but Dr. Sokol–Anderson[2] and Detective Wilson[3] testified as to the contents of certain portions of Exhibit 3.

■ First, Hadley argues that Exhibit 3 contain assertions, repeated in Detective Wilson's and Dr. Sokol–Anderson's testimony, that (1) Mr. Hadley was tested for HIV in February 2009, (2) that a 'positive' result was communicated to him, and (3) that he was 'Post-test counseled.' We need not address whether Exhibit 3 and the related testimony constitute improperly admitted hearsay. After reviewing the record, Hadley's claims fail because he specifically admits each of the facts which he alleges came into evidence through improper hearsay. "If evidence is improperly admitted, but other evidence establishes essentially the same facts, there is no prejudice to the accused and no reversible error." *State v. Yonts,* 84 S.W.3d 516, 519 (Mo.App. S.D.2002).

During Hadley's testimony at trial, the following exchange occurred:

DEFENSE COUNSEL: When did you find out you were HIV positive?

HADLEY: End of February?

Q: Very end of February?

A: Yes.

Q: Now you got tested at the beginning, but you didn't get the results until the end, correct?

A: That's correct.

. . .

Q: So you went and got tested and found you were positive around the end of February. Where did you go get that test?

A: The Pine Lawn Clinic.

Q: Did you meet with somebody after you went to the clinic and—after they called you and told you you were positive?

A: That's correct. I did.

. . .

Q. What happened during that counseling session?

A. We went over disclosure law and safer sex practices.

Hadley then stated that he remembered signing the papers. He also testified that he went back for a second, longer counseling session. He testified that they again went over the requirements of the law in more detail.

This testimony shows that Hadley specifically admitted that he was tested at the end of February 2009, that the result was communicated to him, and that he was post-test counseled. Therefore, he is unable to demonstrate prejudice regardless of whether the statements actually constitute hearsay. *Yonts,* 84 S.W.3d at 519. Thus, we find no error.

■ Hadley also argues that Exhibit 3 contained improper hearsay statements from J.B., a fifteen year old girl who allegedly had a sexual relationship with Hadley

---

**2.** Dr. Sokol–Anderson is an expert in HIV infection and testified as part of the State's case-in-chief

**3.** Detective Matthew Wilson investigated the charges against Hadley.

before he learned that he was HIV positive. J.B. tested positive for HIV in January 2009. Exhibit 3 contains statements from J.B. that she did not want to give Hadley's information to officials because she loved him and did not want him to go to jail for statutory rape.

At trial, portions of Exhibit 3 were read into evidence by Dr. Sokol–Anderson and Detective Wilson. These portions did not address J.B.'s statements, and a review of the record shows that the jury did not have actual medical records with them during deliberations. As such, the jury could not have been prejudiced by any of J.B.'s statements in the Exhibit, and we find no error.

### ii. Confrontation

Hadley argues that the admission of alleged hearsay statements in his medical records violated his right Sixth Amendment right to confront witnesses against him. Hadley raises this issue for the first time on appeal, thus, we review if at all for plain error. Under plain error, Hadley bears the burden of showing that there is an error which is "evident, obvious, and clear" and that such error resulted in a "manifest injustice or miscarriage or justice." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App. W.D.2004).

Hadley basically reframes each of the alleged hearsay errors discussed above as a violation of his Sixth Amendment right to confront witnesses. U.S. Const. amend. VI. We do not address the confrontation issue because, again, Hadley specifically admitted each of the facts allegedly covered by the witnesses' statements, and J.B.'s statements were never considered by the jury during the guilt phase. Therefore, no prejudice exists and the argument is without merit.

### iii. Privileged, Confidential Communications

Hadley argues the trial court erred in admitting during the guilt phase of the trial, all parts of Exhibit 3 except for the positive result of the test and the testimony with regard to that result. He asserts that the communications in those medical records were privileged and confidential. Because Hadley raises this issue for the first time on appeal we review, if at all, for plain error. Under plain error, Hadley bears of the burden of showing that there is an error which is "evident, obvious, and clear" and that such error resulted in a "manifest injustice or miscarriage or justice." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App. W.D.2004).

For reasons already stated above, no prejudice or manifest injustice occurred with the admission of statements from Exhibit 3 or related testimony. Therefore, even if the communications in the medical records may have been privileged—an issue which we need not address—we find that the trial court did not plainly err in admitting the medical records and related testimony.

### III.

■ In Hadley's third and final point on appeal, he argues that *during the penalty phase* "the untested claims of two nonappearing witnesses (J.B. and W.J.) should not have been admitted—either in Exhibit 3 or through Wilson's hearsay testimony—because it was hearsay, irrelevant and a denial of Mr. Hadley's rights under the Sixth and Fourteenth Amendments to confrontation and due process." Hadley acknowledges that these claims were not properly preserved, therefore we review, if at all, for plain error. Under plain error, Hadley bears of the burden of showing that there is an error which is "evident, obvious, and clear" and that such error

resulted in a "manifest injustice or miscarriage or justice." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App. W.D.2004). For the following reasons, the trial court did not plainly err.

There is evidence in the record that Hadley had unprotected sex with at least four women other than M.G. after he learned that he was HIV positive. The main sources of this information are (1) statements provided to officials in the Exhibit 3 medical records; (2) Hadley's own statements on an audio recording ("tape") of his interrogation by Detective Wilson following Hadley's arrest in September 2009; (3) Detective Wilson's testimony on statements made by women he interviewed. A brief summary of type of evidence pertaining to each woman will aide the analysis.

### *"Ebou"*

Hadley admitted on the tape that he had vaginal intercourse with a woman named "Ebou" after he learned that he was HIV positive, and that he did not disclose his status to her. At the penalty phase, Detective Wilson confirmed that Hadley made these statements during the interrogation. Detective Wilson also testified that he was unable to locate "Ebou" for an interview. Defense counsel did not object to Detective Wilson's testimony regarding "Ebou."

### *Jetuan*

Hadley admitted on the tape that he had sex once with Jetuan, his child's mother, after learning he was HIV positive. At the penalty phase, Detective Wilson testified that Hadley specifically mentioned having sex with Jetuan, in August 2009. Detective Wilson interviewed Jetuan, and he testified that she told him that she had engaged in unprotected vaginal sex with Hadley numerous times after February 2009, and that she was HIV positive. Defense counsel objected to Detective Wilson's testimony about Jetuan's statements, but the trial court overruled this objection.

### *J.B.*

Exhibit 3 lists J.B. as the "index case." From the record, it appears that J.B. was diagnosed with HIV, and she provided officials with Hadley's name and contact information as someone with whom she had engaged in intercourse. The record shows that she reluctantly provided Hadley's name because she was fifteen years old at the time, and because "she loves him and [did] not want him to go to jail for statutory rape." The clinic then contacted Hadley to be tested.

On the tape, Hadley admitted to "messing with" J.B. He stated that J.B. called him and that he was aware "that it was a possibility that I had HIV" because of that phone call.

Detective Wilson testified that he interviewed J.B. and that J.B. stated that she had been sexually involved with Hadley and Hadley never disclosed his HIV status to her. Defense counsel did not object to this testimony.

### *W.J.*

W.J. is not mentioned on the tape or in the Exhibit 3 records. However, Detective Wilson testified that he interviewed W.J. based on anonymous email that she was HIV positive. Detective Wilson testified in the penalty phase that W.J. stated to him that she had engaged in unprotected vaginal, anal, and oral sex with Hadley numerous times between February 2009 and September 2009, and that he did not disclose his HIV positive status to her. Defense counsel objected to this testimony, but the trial court overruled the objection.

"During the penalty phase, both the state and the defense may introduce any evidence pertaining to the defendant's character," "including evidence detailing the circumstances of prior convictions, evidence of a defendant's prior unadjudicated criminal conduct, and evidence of the defendant's conduct that occurred subsequent to the crime being adjudicated." *State v. Cole*, 71 S.W.3d 163, 174 (Mo. banc 2002). The penalty phase jury may only consider evidence of criminal conduct for which the defendant was never convicted if such evidence is proven by a preponderance of the evidence. *State v. Fassero*, 256 S.W.3d 109, 119 (Mo. banc 2008).

Hadley specifically admitted to having sex with "Ebou," Jetuan, and J.B. on the tape, and it is undisputed that these admissions were properly before the jury. Unlike *Fassero* where the prosecution attempted to use an indictment as evidence of criminal conduct, 256 S.W.3d at 119, direct admission by the defendant satisfies the "preponderance of the evidence" standard. Therefore, the jury was entitled to consider these admissions as evidence of his character.

Even if, for the sake of argument, we accept Hadley's assertions that the evidence in the medical records referring to J.B. should have been excluded, and that Detective Wilson should not have been allowed to testify as to statements given to him by J.B. and W.J. during interviews, Hadley is still unable to show any manifest injustice. Hadley's own admissions on the tape provide additional, overwhelming evidence that he engaged in a pattern of promiscuous behavior with numerous unsuspecting females after he learned that he was HIV positive. In short, the jury had overwhelming evidence on which to base its sentencing recommendation even without the evidence related to J.B. and W.J. Therefore, there is no plain error, and the judgment and sentence of the trial court is affirmed.

KATHIANNE KNAUP CRANE, P.J. and ROBERT M. CLAYTON III, concur.