

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

STATE OF MISSOURI,                    )        No. ED100035
                                      )
    Respondent,               )        Appeal from the Circuit Court
                                      )        of Lincoln County
v.                                    )
                                      )
JEFFREY A. CHANDLER,                  )        Hon. James D. Beck
                                      )
    Appellant.                )        FILED:  May 6, 2014

Jeffrey Chandler ("Defendant") appeals from the judgment of the trial court following a bench trial in which the trial court convicted him on two counts of second degree statutory sodomy (Counts I and III), one count of second degree rape (Count II), and one count of incest (Count IV), all felonies, and sentenced him to three consecutive sentences of seven years' imprisonment each on Counts I through III, and to one concurrent term of four years' imprisonment on Count IV.  Defendant argues that the trial court improperly admitted hearsay evidence where the State failed to prove that the victim, T.C., was a "vulnerable person" under the hearsay exception in section 491.075 RSMo. Cum. Supp. 2012.[1]  Finding no error, we affirm.

Defendant does not challenge the sufficiency of the evidence of his guilt.  Viewed in the light most favorable to the judgment, the facts are as follows.  T.C., who was born in 1992, is the biological daughter of Defendant and his wife.  T.C. has learning

---

[1] Unless noted otherwise, all further statutory citations are to RSMo. Cum. Supp. 2012.

disabilities and an I.Q. of 58. Starting when T.C. was sixteen years old Defendant began to have sexual intercourse with T.C. and also committed oral and anal sodomy, having her perform oral sex on him until "white stuff would come out." Defendant also touched T.C.'s genitals with his fingers. In January 2010, TC was upset and told the school nurse about the incidents with Defendant. The school nurse called in the school counselor, Denise Richards ("Counselor"), who talked with her. T.C. told her that she was having a bad day because Defendant had been making her lick on his "private parts." T.C. demonstrated what she meant to Counselor by licking a pen several times. T.C. also told her that Defendant would sometimes put his fingers in her private area and would sometimes put his penis in her privates as well. T.C. cried while telling Counselor her story, and said that she had not told anyone earlier because she was afraid of Defendant. Counselor called the abuse hotline and also called T.C.'s mother.

Deputy Erin Doherty and Lieutenant David Lingle of the Lincoln County Sheriff's Office responded to the call, bringing along a representative of the Children's Division of the Missouri Department of Social Services. T.C. told Deputy Doherty that Defendant had sexual intercourse with her and that she performed oral sex on him at her home. Deputy Doherty and Lt. Lingle went to T.C.'s home and got consent to search the home from T.C.'s mother. They seized some sheets from the bedrooms, and Defendant agreed to give a DNA sample. The sheet from T.C.'s bedroom had a semen stain with Defendant's DNA.

T.C. was interviewed by Mindy Skaggs, a forensic interviewer ("Interviewer") at the Child Advocacy Center ("CAC") in Wentzville, Missouri. Interviewer estimated T.C.'s mental capacity to be that of a child of 10 to 12 years of age, and geared her

2

questioning accordingly. T.C. told her that Defendant raped her, explained what rape meant, and stated that he began doing it when she was 14 years old. She also told her that Defendant touched her breasts and put his finger in her vagina, and that something sexual happened every day. A SAFE examination was performed on T.C. by Lori Sievers, a nurse practitioner ("Nurse"). T.C. told her that Defendant would tell her when he wanted sex and that he would put his penis in her vagina or rectum. Nurse estimated that T.C. had a mental age of roughly 12 to 13 years old.

The probate court subsequently entered a judgment that T.C. was incapacitated and disabled and the Lincoln County Public Administrator, Betty Cox ("Administrator"), was appointed as her guardian. T.C. was placed in a group home for her safety, where she remained under supervision, and she continued her education.

Defendant was charged by amended information with Counts I through IV. He waived his right to a jury trial and the case was bench-tried. Prior to trial the State filed a motion that it intended to rely on section 491.075. Section 491.075 provides, in part, that:

> 1. A statement made by a child under the age of fourteen, or a vulnerable person, relating to an offense under chapter 565, 566, 568, or 573, performed by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:
>
> (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
>
> (2)(a) The child or vulnerable person testifies at the proceedings; or
>
> …
>
> 5. For the purposes of this section, "vulnerable person" shall mean a person who, as a result of an inadequately developed or impaired

3

intelligence or a psychiatric disorder that materially affects ability to function, lacks the mental capacity to consent, or whose developmental level does not exceed that of an ordinary child of fourteen years of age.

The trial court held a hearing on this motion, at which the State introduced T.C.'s school records ("Pretrial Exhibit 1"), which included her Individualized Education Plan ("IEP"), and the certified documents of the guardianship of T.C. in Lincoln County ("Pretrial Exhibit 2"). The State also called Administrator as a witness at the hearing. Defendant's counsel introduced the medical records from Barnes-Jewish Hospital from T.C.'s examination ("Defendant's Exhibit A"). The State argued that the Lincoln County Probate Court had already determined that T.C. was incapacitated and disabled, and that the IEP indicated that her intellectual state was that of a "vulnerable person" under section 491.075. Defense counsel argued that the records indicated otherwise and that the State failed to prove that T.C. was a "vulnerable person" and needed to introduce expert evidence if it wished to establish that.

The case proceeded to trial. Administrator, T.C., Counselor, Deputy Doherty, Interviewer, Lt. Lingle, and Nurse testified. Stacy Bolinger, of the Missouri Highway Patrol Crime Laboratory testified about the DNA testing. T.C.'s brother and mother also testified at trial. The State introduced a number of exhibits into the record, and the Defendant introduced Exhibit A. The trial court convicted Defendant on all four counts, and sentenced him to three consecutive terms of seven years' imprisonment for Counts I through III, and to a concurrent term of four years' imprisonment on Count IV. Defendant now appeals from this judgment.

In his sole point relied on Defendant contends that the trial court abused its discretion in overruling his objections to the alleged hearsay testimony of Counselor,

Nurse, and the DVD of the CAC interview introduced through Interviewer. He argues that this violated his constitutional rights to confrontation and to a fair trial in that these statements were admitted under section 491.075 as "made by a vulnerable person" and that T.C. did not meet the statutory definition of "vulnerable person."

We review a trial court's decision to admit or exclude out-of-court statements offered under section 491.075 for abuse of discretion. State v. Porras, 84 S.W.3d 153, 156 (Mo. App. 2002). The decision to admit or to exclude evidence is an abuse of discretion when it clearly is against the logic of the circumstances before the court, and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful, deliberate consideration. State v. Roggenbuck, 387 S.W.3d 376, 382 (Mo. banc 2012) (quoting State v. Davis, 318 S.W.3d 618, 630 (Mo. banc 2010)). This Court reviews the admission or exclusion of evidence for prejudice, not mere error, and will affirm the trial court's ruling unless it was so prejudicial as to deprive the defendant of a fair trial. State v. Austin, 411 S.W.3d 284, 289 (Mo. App. 2013) (quoting State v. Hadley, 357 S.W.3d 267, 269 (Mo. App. 2012)).

Defendant in essence argues that there was insufficient evidence to establish that T.C. was a "vulnerable person" as defined under section 497.075. Viewed in the light most favorable to the judgment, the evidence showed that T.C. had an I.Q. of 58 and was in an IEP because she was determined to be intellectually disabled, which disability affected her progress in a regular classroom. The probate court found T.C. to be an incapacitated and disabled person and appointed a guardian for her based on her mental condition. Administrator testified that T.C. was placed in a group home because she needed supervision over her daily activities. T.C.'s medical records indicated that she

5

had "limited mental capacity and appeared delayed." Interviewer testified that T.C.'s mental capacity was roughly that of a ten to twelve year old child. Nurse testified that T.C.'s mental age appeared to be about twelve to thirteen years old. There was sufficient evidence for the trial court to find that T.C. was a "vulnerable person" under section 491.075.

Defendant argues that T.C's competency to testify, as determined by the trial court, "should have trumped the probate court's finding of incapacity" and that the State had to have some expert testimony to meet the burden of proof to establish that T.C. was a "vulnerable person" under section 491.075. Section 491.075 does not require that a "vulnerable person" lack the competency to testify, and it does not require expert testimony. On the contrary, section 491.075.1(2)(a) contemplates that the "vulnerable person" does testify at the proceeding. Accordingly, the competency of a "vulnerable person" to testify at a criminal proceeding does not render that witness no longer a "vulnerable person."

Assuming *arguendo* that the trial court erred in admitting the testimony of Counselor and Nurse and in admitting the DVD of the CAC interview, Defendant has failed to show that he was prejudiced. This Court presumes in a bench-tried case that any improper or inadmissible evidence was not prejudicial and that the trial court was not influenced by it in reaching a judgment unless it is apparent from the record that the trial court considered and relied on the improper or inadmissible evidence. State v. Crews, 406 S.W.3d 91, 94-95 (Mo. App. 2013). T.C.'s testimony alone was sufficient for the trial court to convict Defendant on all four counts. There is nothing in the record that indicates that the trial court relied on the allegedly inadmissible evidence. Point denied.

The judgment of the trial court is affirmed.

_____
CLIFFORD H. AHRENS, Judge

Roy L. Richter, P.J., concurs.
Glenn A. Norton, J., concurs.