STATE of Missouri, Respondent,

v.

Oscar CONTRERAS-CORNEJO, Appellant.

WD 79321

Missouri Court of Appeals, Western District.

OPINION FILED: MAY 30, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2017

Christine K. Lesicko, Jefferson City, MO, Counsel for Respondent.

Samuel E. Buffaloe, Jefferson City, MO, Counsel for Appellant.

Before Division Three: Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, J. and Cynthia L. Martin, J.

Anthony Rex Gabbert, Judge

### Introduction

Oscar Contreras-Cornejo ("Defendant") appeals his convictions after a jury trial in Boone County, Missouri for one count of the unclassified felony of sodomy in the first degree, one count of statutory sodomy in the first degree, one count of the unclassified felony of statutory rape in the first degree, and two counts of the class A felony of sexual exploitation of a minor. On appeal, Defendant argues that: (1) the trial court plainly erred in running Counts I, III, and IV consecutively to each other because it violated his Fourteenth Amendment right to due process; (2) the trial court abused its discretion by preventing relevant expert testimony and thereby violated Defendant's Sixth and Fourteenth amendment rights to a fair trial; and (3) the trial court abused its discretion in preventing defense counsel from impeaching a witness at trial and thereby violated Defendant's Sixth and Fourteenth amendment rights to a fair trial. We affirm.

### Factual and Procedural Background

The State charged Defendant with two counts of the unclassified felony of sodomy in the first degree, one count of statutory

sodomy in the first degree, one count of statutory rape in the first degree, and two counts of the class-A felony of sexual exploitation of a minor. Defendant's jury trial occurred on November 3-6, 2015. At the conclusion of the trial, the jury found Defendant guilty of Count I, sodomy in the first degree; Count III, statutory sodomy in the first degree; Count IV, statutory rape in the first degree; and Counts V and VI, sexual exploitation of a minor.

The jury recommended sentences of life imprisonment for Count I, thirty (30) years for Counts III and IV, and ten (10) years for Counts V and VI. In accordance with the jury's recommendation, the trial court sentenced Defendant to life imprisonment for Count I, thirty years for Counts III and IV, with counts V and VI running concurrently and Counts I, III, and IV running consecutively to each other and to Counts V and VI.

### a. Sentencing

At sentencing, the State recommended that the trial court sentence Defendant in accordance with the jury's recommendation and that the sentences run consecutively. Specifically, the State told the trial court: "Judge, by law, Counts I, III, IV have to run consecutively. Additionally, Counts V, and VI, although those two can run concurrently, they must run consecutively to I, III and IV." Further, in response to defense counsel's request for minimal punishment, the State re-iterated its position that the sentences must be run consecutively:

> THE STATE: Punishment fixed on Count I at life imprisonment in the Missouri Department of Corrections; Count III, 30 years, Missouri Department of Corrections, which was the jury's recommendation; Count IV, 30 years, Missouri Department of Corrections. All to run consecutively as required by statute, that's 558.026 ... [a]nd actually I, III,

and IV have to be consecutive to all other sentences, so they can only run concurrently with each other.

Later in the same hearing, the trial court appears to agree with the State's stance on the statutory requirement of consecutive sentences:

> [THE COURT]: What the jury doesn't know when they consider the range of punishment is all those extra provisions, the mandatory consecutive ... [a]nd then you get to Counts I and III, mandatory consecutive to all other counts, which means whatever term of years it is, it's consecutive to life, which is at least 30 years before parole. You know, the best case scenario would be 47 years by statute that I have absolutely no discretion over. So the constraints by statute are many on Counts I, III and IV.

> THE STATE: So, Judge, just so I'm understanding, V and VI will run concurrent with each other, but consecutive to others; correct?

> [THE COURT]: They have to be under you know, the 558.026 requires that those sentences be consecutive to all other sentences ... And again, the statute requires that Counts I, III, and IV be consecutive to all other sentences.

Defense counsel did not object during the sentencing hearing or at the imposition of the sentences.

### b. Expert Witness

Dr. Matthew Fanetti ("Dr. Fanetti"), a professor of psychology at Missouri State University, was proffered by defense counsel as an expert witness. In response, the State filed a motion in limine seeking to exclude the testimony of Dr. Fanetti. A *Frye* hearing was held during the trial, out of the presence of the jury, in order to determine whether Dr. Fanetti qualified as an expert. At issue was Dr. Fanetti's

adopted protocol used to assess forensic interviews of child victims. By Dr. Fanetti's own admission, his protocol, PEFIC (Protocol for Evaluating Forensic Interviews of Children) was not recognized by any of the national organizations on child abuse and neglect or forensic interview training. Dr. Fanetti further testified that, "the PEFIC as a protocol is not widely accepted. And I don't know how often it is utilized ... yes, you could say that there are no interview protocols, developing organization that accept the evaluation of the PEFIC."

The trial court determined that "it's just very, very plain from his testimony that it's not accepted; it's not an accepted scientific technique or procedure that the community relies on and that's accepted in the community." The trial court sustained the portion of the State's motion in limine concerning the PEFIC, but stated that it would allow Dr. Fanetti to testify as an expert in the field of psychology.

At trial, defense counsel called Dr. Fanetti during its case-in-chief to testify about reconstructive memory. Defense counsel called a side bar and announced that it wanted to question Dr. Fanetti about his opinions regarding possible areas of bias in the child advocacy interviews conducted during the investigation of the alleged crimes. The State raised an objection to this line of questioning and cited to its motion in limine. The trial court sustained the State's objection, finding: "We established he wasn't a forensic interviewer and his steps to decide whether there was bias injected was not accepted in the community." In Defendant's "Motion for Judgment of Acquittal Not Withstanding the Verdict Or In the Alternative Motion For A New Trial," defense counsel argued that the trial court erred in sustaining the State's objection. This motion was overruled by the trial court.

### c. Impeachment

Victim A.G.'s brother, hereinafter referred to as "A.R.," was proffered by the State as a witness to the alleged crimes. A.R. testified that he heard his sister, victim "A.G.", crying in the middle of the night and saw Defendant in her bedroom. During cross examination of A.R., defense counsel attempted to ask A.R. about pornographic videos that he may have seen or heard about from his cousin, and the State raised an objection:

DEFENSE COUNSEL: Your cousin also has a phone or tablet; is that right?

A.R.: Yes.

DEFENSE COUNSEL: And [your cousin] watches movies of people doing bad things?

A.R.: Sometimes.

PROSECUTOR: Judge, I'm going to object. May we approach?

Counsel approached the bench and the following exchange occurred:

PROSECUTOR: Judge, I'm going to object, first of all, as to relevance of [the cousin] watching bad things. That's number one. Number two, in relation to what time period? I mean, is he—does he know that he does it? Does he see it? There's no reference....

DEFENSE COUNSEL: I mean, I can ask all of those things. I was trying to touch on that as little as possible.

[THE COURT]: How is it relevant?

DEFENSE COUNSEL: It is absolutely relevant to show how he and potentially the other kids (child witnesses) know about sexual conduct and sexual activity.

. . .

[THE COURT]: Well, but again, this isn't any kind of conduct, you know-like the cousin hasn't come up in any other discussions so-

DEFENSE COUNSEL: He's one of the cousins that A.G. and everyone talks about and says they live with now.

[THE COURT]: Now ... Yeah. So,. I mean, if you want to try to establish a time frame without getting into any of it, then we'll see.

Defense counsel then proceeded with further questions and attempted to impeach A.R. when he testified that he couldn't remember certain answers that he had given during a recent deposition. The State objected, and the trial court sustained the objection:

DEFENSE COUNSEL: Do you remember him (A.R.'s cousin) getting in trouble for watching something?

A.R.: I can't remember.

DEFENSE COUNSEL: Okay. Do you remember him telling you about what he watches?

A.R.: No.

DEFENSE COUNSEL: Do you remember him telling you what he sees?

A.R.: No.

DEFENSE COUNSEL: Do you remember coming here to the courthouse a couple of weeks ago and talking to me in a different room than this?

A.R.: Yes.

DEFENSE COUNSEL: And you promised to tell the truth that day?

A.R.: Yes.

DEFENSE COUNSEL: And I asked—

PROSECUTOR: Judge, I'm going to object based on the same objection I had up at the bench.

DEFENSE COUNSEL: And Your Honor, what he said during the deposition is exactly the opposite of what he just said on the stand, and I can use that to impeach him.

PROSECUTOR: Judge, we're still talking about the time frame; that has not

been established at the deposition or any other time.

. . .

[THE COURT]: You want to use the deposition for impeachment purposes?

DEFENSE COUNSEL: Yes.

[THE COURT]: And what are you impeaching.

DEFENSE COUNSEL: That he says he doesn't remember those things, and two weeks ago he remembered those things.

. . .

PROSECUTOR: There's no time frame on that conversation with his cousin. Was it last week? Was it in 2014? You can't impeach on inadmissible—there's no time frame.

DEFENSE COUNSEL: I certainly can impeach him because his statements now are different than his statements during deposition. His truthfulness is always at issue.

[THE COURT]: But if—he couldn't testify now because he—it's like yesterday as opposed to 20 months ago. It wouldn't be admissible today. And so how can you impeach him to show that it is relevant and in terms of time frame when it's not?

DEFENSE COUNSEL: I'm not impeaching him to show it's relevant. I'm impeaching to show that he is not truthful on the stand and his truthfulness is an issue, a relevant issue for the jury.

[THE COURT]: And I do understand what you're saying. It was to impeach with the fact that he's saying he doesn't remember, that he told you—to impeach him because he's saying he doesn't remember things that he told you two weeks ago. But if it's not admissible because you didn't establish a time frame, then, I mean—it's tricky, because if he remembered it, it might still be

objectionable because it's in the right context or time frame. He saying he doesn't remember it. So you think you should get it, and it wouldn't have been admissible to begin with ... but I'm going to sustain the objection.

Defendant raised issue with the trial court's decision to sustain the objection in his motion for new trial, which was overruled by the trial court. This appeal follows.

## Point I

In his first point, Defendant argues that the trial court erred in not exercising judicial discretion when it sentenced him to consecutive sentences for Counts I, III and IV under Section 558.026 RSMo.

## Standard of Review

■■■ Where a defendant does not raise the issue of infirmities in the sentencing process, the matter is not preserved for review. *State v. Williams*, 465 S.W.3d 516, 519 (Mo. App. 2015). "Issues that were not preserved may be reviewed for plain error only, which requires the reviewing court to find that manifest injustice or a miscarriage of justice has resulted from the trial court error." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). Review for plain error involves a two-step process: the first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted; if plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice. *Id.*; Rule 30.20.[1] All prejudicial error

is not plain error, "and plain errors are those which are evident, obvious and clear." *Baumruk*, 280 S.W.3d at 607 (internal citations and quotation marks omitted).

The version of Section 558.026.1[2] in effect at the time of Defendant's 2013 and 2014 offenses provides that:

Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except in the case of multiple sentences of imprisonment imposed for any offense committed during or at the same time as, or multiple offenses of, the following felonies:

(1)  Rape in the first degree, forcible rape, or rape;

(2)  Statutory rape in the first degree;

(3)  Sodomy in the first degree, forcible sodomy, or sodomy;

(4)  Statutory sodomy in the first degree; or

(5)  An attempt to commit any of the felonies listed in this subsection.

In such case, the sentence of imprisonment imposed for any felony listed in this subsection or an attempt to commit any of the aforesaid shall run consecutively to the other sentences. The sentences imposed for any other offense may run concurrently.

■■■ "The primary rule of statutory construction is to ascertain the intent of the lawmakers by construing words used in the statute in their plain and ordinary meaning." *Hyde Park Hous. P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993) (internal quotation marks and citations omitted). Where the language is clear and unambiguous, there is no room for construction; [i]t is presumed that the leg-

1.  All references are to Missouri Supreme Court Rules.

2.  All statutory references are to Revised Statutes of Missouri (RSMo) as supplemented until January 1, 2017 unless otherwise noted.

islature intended that every word, clause, sentence, and provision of a statute have effect. *Id.* "Conversely, it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute." *Id.* We may not create an ambiguity where the words of a statute are plain. *Orla Holman Cemetery, Inc. v. Robert W. Plaster Trust*, 304 S.W.3d 112, 117 (Mo. banc 2010).

▮ Here, the plain language of Section 558.026 supports the trial court's understanding that it had no discretion in sentencing Defendant for Counts I (Sodomy or Attempted Sodomy-1st Degree), III (Statutory Sodomy-1st Degree) and IV (Statutory Rape-1st Degree). All three of these convictions are listed in the statute immediately above the plain and clear language, "the sentence of imprisonment imposed for any felony listed in this subsection or an attempt to commit any of the aforesaid *shall run consecutively* to the other sentences." (Emphasis added). Defendant was found guilty by jury of three of the five listed felony offenses in the statute. It goes against logic to suggest that the legislature meant to leave room for judicial discretion at the sentencing stage where the Defendant was convicted of three of the five listed offenses. The language "shall run consecutively" leaves little, if any room for judicial discretion on whether or not to run the sentences concurrent or consecutive. Because the language of the controlling sentencing statute is clear and unambiguous, we presume that the legislature intended that every word, clause, sentence, and provision of the statute have effect, and we find no plain error in the trial court's consecutive sentences for Counts I, III and IV. In so holding, we reject Defendant's argument that Section 558.026 is ambiguous. Defendant relies on *Williams v. State*, 800 S.W.2d 739, 740 (Mo. banc 1990) where an earlier version of Section 558.026 was held to be ambiguous because the statute made clear that sentences for rape, sodomy and attempt must run consecutively to "other sentences" but did not say in explicit language what must be done if there are multiple convictions of the listed offenses. Here, the 2013 amendment of Section 558.026.1 eliminates the ambiguity discussed in *Williams* by leaving no question that the reference to "other sentences" refers to multiple offenses of the listed felonies. We recognize that the pre-2013 version of Section 558.026 was "interpreted by our courts to mean that sentences for sex offenses must run consecutively to non-sex offenses committed at the same time, but the trial court has discretion to impose consecutive or concurrent sentences for multiple sex-crime convictions." *State v. Elam*, 493 S.W.3d 38, 43 (Mo. App. S.D. 2016) (involving sex offenses committed between 2009 and 2012). Our Supreme Court concluded that the pre-2013 version of Section 558.026 was ambiguous, because "[i]t d[id] not … say in explicit language what must be done if there are multiple convictions of th[e] [sexual] offenses listed" in the statute. *Williams*, 800 S.W.2d at 740. The 2013 amendment to Section 558.026 resolves that ambiguity, however, since it now states that consecutive sentencing is required <u>both</u> when multiple sentences are imposed "for any offense committed during or at the same time as" the listed sexual offenses, but <u>also</u> when multiple sentences are imposed for "multiple offenses of" the listed felonies. This amendment makes clear that multiple sentences for the listed felonies must run consecutively to each other, not only to sentences for non-listed offenses committed at the same time. Case law interpreting the pre-2013 version of Section 558.026 does not control the application of the post-2013 statute. Point one is denied.

## Point II

Next, Defendant argues that the trial court abused its discretion in preventing Dr. Fanetti from testifying regarding his evaluations of the content of the child advocacy center interviews of A.G. and K.R. using his PEFIC protocol because Dr. Fanetti is an expert in the areas of memory and psychology and the protocol is generally accepted in the scientific community.

## Standard of Review

In matters involving admissibility of evidence, the appellate court "reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Churchill*, 98 S.W.3d 536, 538 (internal quotation marks and citation omitted). "It is within the trial court's discretion to allow or exclude expert testimony." *State v. Biezer*, 947 S.W.2d 540, 541 (Mo. App. 1997). "A trial court will be found to have abused its discretion concerning the admission of evidence when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Elliott v. State*, 215 S.W.3d 88, 92 (Mo. banc 2007). In child sexual abuse cases, the trial court has great discretion in admitting profile expert testimony which describes behaviors and other characteristics commonly observed in sexual abuse victims. *Biezer*, 947 S.W.2d at 541.

Expert testimony is admissible if it is clear that the subject of such testimony is one upon which jurors, for want of experience or knowledge would otherwise be incapable of drawing a proper conclusion from facts in evidence. *State v. Baker*, 422 S.W.3d 508, 513 (Mo. App. 2014). In child sex abuse cases, specifically, two types of expert testimony are typically challenged: (1) "profile" testimony describing behaviors and other characteristics commonly observed in sexual abuse victims; and (2) particularized testimony concerning the alleged victim's credibility. *Biezer*, 947 S.W.2d at 541. "Although the trial court has great discretion in admitting the former, the latter usurps the province of the jury and, therefore, is inadmissible." *Id.* In general, admission of scientific evidence or opinion depends on wide acceptance in the relevant scientific community of its reliability. *State v. Sloan*, 912 S.W.2d 592, 596 (Mo. App. 1995).

Here, it was made clear on the record during the *Frye*[3] hearing that Dr. Fanetti's PEFIC protocol was not widely accepted in the relevant scientific community. By Dr. Fanetti's own admission: "the PEFIC as a protocol is not widely accepted. And I don't know how often it is utilized ... yes, you could say that there are no interview protocols, developing organization[s], that accept the evaluation of the PEFIC." This statement clearly establishes that Dr. Fanetti's PEFIC protocol is not widely accepted in the relevant scientific community. Based on this admission, the trial court determined that, "it's just very, very plain from his testimony that it's not accepted; it's not an accepted scientific technique or procedure that the community relies on and that's accepted in the community." Dr. Fanetti's proposed testimony regarding potential biases in the child advocacy center's interviewing techniques not only fell short of qualifying as "expert testimony," but it also risked invading the province of the jury. For these reasons, we find no abuse of discretion by the trial court in granting the State's motion in limine excluding testimony from Dr. Fanetti about his PEFIC protocol and again at trial where defense counsel at-

---

3. *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)

tempted to introduce evidence concerning the protocol. Point two is denied.

## Point III

In his last point on appeal, Defendant asserts that the trial court abused its discretion in preventing defense counsel from impeaching A.R.'s testimony about whether or not he had previously watched pornographic videos with his cousin because it prevented counsel from attacking A.R.'s character for truth or veracity. Specifically, Defendant argues that the trial court's refusal to allow defense counsel to impeach A.R. with his previous deposition testimony violated his right to due process.

## Standard of Review

"The trial court is afforded broad discretion in assessing the admissibility of evidence. Its ruling on the admissibility of the evidence will not be interfered with on appeal absent a clear abuse of discretion." *State v. Mozee*, 112 S.W.3d 102, 105 (Mo. App. 2003). "We review trial court decisions regarding the admissibility of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* (internal quotation marks and citations omitted).

As a general proposition, the credibility of witnesses is always a relevant issue. *State v. Austin*, 411 S.W.3d 284, 289 (Mo. App. 2013). "A witness may be cross-examined about specific instances of his or her own conduct that speak to his or her character for truth and veracity, even if the issue is not material to the substantive issues in the case." *State v. Sauerbry*, 447 S.W.3d 780, 790 (Mo. App. 2014). "Such testimony may, however, be limited by the court if it is more prejudicial than probative." *Id.*

It was within the trial court's discretion to preclude A.R.'s testimony based on its determination that the testi-

mony was irrelevant without an established time frame. Without an established time frame of when A.R. viewed or discussed pornographic movies, in relation to his statements about Defendant's actions, we cannot say that it was clearly against the logic of circumstances for the trial court to rule that impeaching A.R. was improper. Additionally, we find no prejudice was suffered by Defendant as a result of the trial court's ruling. A.R. was not the accuser in this case and only testified that he heard his sister crying and screaming in the middle of the night and witnessed Defendant present in her bedroom. We see no evidence on the record demonstrating that, had defense counsel been able to impeach A.R. regarding his prior viewing or discussion of pornographic videos, the outcome of the trial would have been different. Based on the record before the court, we cannot conclude that Defendant was deprived of his due process rights and find no abuse of discretion. Point three is denied.

## Conclusion

We conclude, therefore, that the trial court did not err in running the sentences for Counts I, III and IV consecutively because the language of Section 558.026 clearly and unambiguously required that Defendant be sentenced consecutively. Additionally, we find no abuse of discretion in the trial court's decision to sustain the State's objection to Dr. Fanetti's testimony regarding his PEFIC protocol. Finally, we hold that the trial court did not abuse its discretion in sustaining the State's objection to defense counsel's attempt to impeach A.R. with his prior deposition testimony. We affirm.

All concur.