

# In the Missouri Court of Appeals
## Eastern District
**DIVISION THREE**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111409 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | No. 19SL-CR04093-01 |
| | ) | |
| DOMINIC S. YOCCO, | ) | Honorable Ellen H. Ribaudo |
| | ) | |
| Defendant/Appellant. | ) | |
| | ) | Filed: July 30, 2024 |

**OPINION**

Defendant, Dominic S. Yocco, appeals the judgment and sentence entered by the Circuit Court of St. Louis County following his conviction by a jury of 16 counts of sexual offenses involving eight victims: five counts of first-degree rape in violation of section 566.030 RSMo. (2016); four counts of second-degree rape in violation of section 566.031; one count of first-degree sodomy in violation of section 566.060; five counts of second-degree sodomy in violation of section 566.061; and one count of attempted second-degree sodomy in violation of section 566.061. The jury further found Defendant to be a predatory sexual offender, as charged, pursuant to section 566.125.5(3).[1] The trial court sentenced Defendant to 16 consecutive terms of life imprisonment with eligibility for parole after 83 years.

---

[1] Except as otherwise indicated, statutory references are to RSMo. (2016). References to section 558.026.1 are to RSMo. (2016 & Supp. 2023).

Defendant raises 42 points on appeal, in which he challenges the jury instructions, the admission of certain testimony, the exclusion of certain evidence, the sufficiency of the evidence, the imposition of consecutive sentences, the length of sentences imposed, and the jury's finding that he is a predatory sexual offender.

We reverse in part, and affirm in part. As conceded by the State, we find the trial court plainly erred in sentencing Defendant to a term of life imprisonment as a predatory sexual offender for each of the following ten counts: four convictions for the class D felony of second-degree rape (counts 8, 14, 15, and 17); five convictions for the class D felony of second-degree sodomy (counts 3, 9, 10, 11, and 12); and one conviction for the class E felony of attempted second-degree sodomy (count 18). Because section 566.125.1 does not encompass the offenses of second-degree rape or second-degree sodomy, the sentence of life imprisonment imposed for each of those ten counts exceeded the maximum sentence for the respective offense. As a result, we set aside Defendant's life sentences for counts 3, 8, 9, 10, 11, 12, 14, 15, 17, and 18, and remand the cause to the trial court for resentencing for those counts only, in accordance with this opinion.

The trial court's judgment is affirmed in all other respects. We affirm Defendant's conviction of all 16 counts; the life sentences imposed for the five counts of first-degree rape (counts 1, 2, 4, 5, and 6) and one count of first-degree sodomy (count 13); the imposition of consecutive sentences; and the jury's finding that Defendant is a predatory sexual offender.

### Factual and Procedural Background

The State charged Defendant with numerous counts of first- and second-degree rape, first- and second-degree sodomy, and attempted second-degree sodomy or in the alternative second-degree sexual abuse. The offenses involved nine different victims, and were alleged to

2

have occurred between 2016 and 2018. Most of the victims did not know one another, and most were teenagers at the time of the offenses. The parties proceeded to trial on 19 counts. Nine victims testified for the State, along with three lay witnesses, a forensic interviewer with the Child Advocacy Center, and a detective with the St. Louis County Police Department. Defendant exercised his right not to testify, and presented no evidence other than through cross-examination. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. *State v. Clark*, 490 S.W.3d 704, 707 (Mo. banc 2016).

### *Evidence Presented At Trial*

*Victim CC – Counts 1 through 3*

In early July 2018, CC had run away from home. CC had stayed with her friend, JH, for about two weeks, and then went to the home of a second friend. That second friend introduced CC to Defendant. Defendant came and picked up CC, and she went with Defendant to his home in North St. Louis County and "hung out." CC had no phone, no transportation, and nowhere else to stay. She knew the police were looking for her because she had run away from home. While CC and Defendant were hanging out after dinner, Defendant began to show CC videos of other girls doing "sexual things to him." Defendant told CC that he wanted her to do similar things, but she told him she did not want to.

CC eventually fell asleep, and when she awoke, Defendant was attempting to put his penis into her mouth. CC told Defendant she did not want to engage in sexual activity. Nevertheless, Defendant held CC down, covered her mouth with one hand, and forced his penis into her vagina. CC went to sleep after the assault. The next morning, Defendant again held CC down and had vaginal intercourse with her, despite CC's statements that she did not want to. Two of Defendant's friends came over to his house later that day, including DP, and CC hung

3

out with Defendant and his friends. CC told DP what Defendant did to her. Over Defendant's objection, DP also testified that while he and CC were at Defendant's house, CC told him Defendant "forced himself on her. And that she had been stuck there for at least two, three days." CC and DP tried to find someone to come pick them up from Defendant's house, but they were unsuccessful in finding a ride. They eventually left Defendant's house on foot after Defendant, who had become increasingly agitated, threatened to get his gun. The State charged Defendant with two counts of first-degree rape and one count of second-degree sodomy with regard to CC.

*Victim GG – Count 4*

GG met Defendant through a social media app. In November 2017, prior to Thanksgiving, GG and her friend, AA, met up with Defendant and his friend at a mall. The group then went to the apartment of another of Defendant's friends, where Defendant offered the girls alcohol. This was GG's first experience drinking alcohol, and she felt "completely out of it." She then went with AA, Defendant, and two other men to Defendant's home where GG "kind of blacked in and out." She remembered that AA went home, and the next thing she remembered after that was Defendant being on top of her on the living room couch with his penis in her vagina. GG said "no," and tried unsuccessfully to push Defendant off her. Defendant continued to hold GG down, and covered her mouth with his hand. GG testified that when she "came to" again, the two other men were also assaulting her. The trial court admitted State's exhibits 17 and 18, a video of GG and a still photograph of GG apparently passed out on a couch taken from the video, respectively.

AA, GG's friend who was with her for the earlier part of the evening, testified that GG was "very not herself" and was slurring her words after drinking alcohol that evening. She

4

confirmed that GG was "having trouble functioning normally" and "seemed pretty out of it." The State charged Defendant with one count of first-degree rape as to GG.

*Victim KS – Count 5*

KS met Defendant via a social media app, and they hung out together on the weekends during August. They were hanging out again in November 2016 at Defendant's home, along with two of KS's friends, while Defendant drank alcohol and KS smoked marijuana. KS fell asleep on Defendant's couch, but Defendant woke her up by flicking water in her face and took her upstairs to his room, where one of KS's friends was already in bed. KS lay in bed with her friend, so that she would not "have to worry about [Defendant]." Defendant surprised KS by lying down between her and her friend some five to ten minutes later. He asked KS to perform oral sex on him, and she agreed although she did not want to. Defendant then asked her to have sex. KS said "no," but Defendant removed her pants and sought to remove her underwear. KS held onto her underwear, and cried and pleaded with Defendant not to have sex, at which point Defendant pulled KS's underwear to the side and inserted his penis in her vagina. KS continued to protest and to tell Defendant that he was hurting her, but Defendant ignored her protests. The State charged Defendant with one count of first-degree rape as to KS.

*Victim JH – Count 6*

JH became acquainted with Defendant via a social media app in December 2017 when she was 15 years old. That same month, JH sneaked out of her mother's house, Defendant and two other persons picked up JH. In the car, Defendant drank alcohol with JH, and JH estimated she and the other persons in the car drank half a bottle of Smirnoff. Defendant also provided JH with three marijuana blunts, which she smoked by herself as Defendant directed. The group went to Defendant's house. JH was unsure how much she had to drink although she felt "very

intoxicated. Um, to the point that you're, like you're not even thinking of anything, you're kind of just following someone sitting down." At one point, JH testified, she was so intoxicated that when she placed her hand on her other arm, she could not feel her own arm. Eventually, JH "blacked out" on a couch in the front living room of Defendant's home while watching a movie.

JH awakened on a different couch in a different room at the back of the house, and found her pants and underwear had been removed. She did not recall removing her pants or underwear, and felt pain in her vagina. She testified to feeling "[a] lot of discomfort. I could obviously tell that, um, something had happened." JH also saw blood on the couch. She asked Defendant what happened, and he told her they had sex. JH testified that she felt confused, because she did not recall either wanting to have sex or actually having sex.

JH then entered into a dating relationship with Defendant. She explained:

> A. I was young. Um, I hadn't—I had only had sex one time before that. Um, and I didn't—I didn't know how to feel about it. I felt really gross. And I had always felt like people only have sex when they're in a relationship together, and I don't know, somehow that's just what made sense at the time.
> Q. Did it make you feel better about what had happened to you by getting into a relationship with the defendant?
> A. Yes.

After JH's dating relationship with Defendant ended, she was in therapy, diagnosed with post-traumatic stress disorder, and "started remembering things, and that eventually led to [her] having the nightmares about it." The State charged Defendant with one count of first-degree rape as to JH.

*Victim MP – Counts 7 through 12*

The State next called MP, and the parties stipulated that the events MP described occurred in fall 2018.[2] MP met Defendant at a movie theater through a friend, and began messaging with him via Snapchat. One night, MP snuck out of her house while her parents slept; left her phone at home so her parents would not know where she was; and met up with Defendant, who was parked down the street from MP's house. In the car, Defendant performed oral sex on MP, and then engaged in vaginal intercourse with her. MP told Defendant that the intercourse hurt, but Defendant did not stop.

The two then drove to Defendant's home, and MP told Defendant that she did not want to engage in any sexual acts. They went to Defendant's room and MP told him "maybe five" times, that she did not want to engage in any sexual acts. Nevertheless, Defendant proceeded:

> Q. Can you tell the jury exactly, and I'm sorry, M[], to have to ask you this: Can you tell the jury exactly what sex acts occurred in his room after you told him no?
> A. Yes. So we did [mutual oral sex]. And I told him that that hurt and to stop. I did say stop. After I said it hurt, I said stop, but he didn't, and then um, I . . .
> Q. Did he have vaginal sex with you again?
> A. Yeah.

MP told Defendant she wanted to go home, but Defendant declined to take MP home until they engaged in more sexual activity. During the encounter at Defendant's house, MP also touched Defendant's genitals with her hand, and Defendant touched MP's genitals with his hand although MP did not want to engage in those activities. The State charged Defendant with two counts of second-degree rape and four counts of second-degree sodomy as to MP.

*Victim JW – Counts 13 through 15*

JW met Defendant in January 2017 through a mutual friend. Defendant and GG picked up JW one night, and the three went to GG's home so she could pick up her overnight bag. JW

---

[2] MP remembered when the events with Defendant occurred based on her grade in school at the time. The parties stipulated to the date of the events MP described so that she would not reveal her grade and, by implication her age, to the jury.

7

was in the back seat of the car, and Defendant was in the front. GG went into her house, and was inside for about 20 minutes. While GG was inside, Defendant got into the back seat with JW, grabbed her hair, and forced his penis into her mouth. Defendant stopped when GG returned to the car. The three went to Defendant's home, where Defendant instructed JW to tell his mother that she, JW, was 16 years old. Defendant later pulled JW onto the couch, and proceeded to have vaginal intercourse with JW although she told him she did not want to have sex. At some point, Defendant stopped, pulled up his pants, and led JW upstairs. JW felt sick because of what was happening to her and went into the bathroom. There, Defendant forcibly removed JW's pants and had vaginal intercourse with her again, despite her saying "no." The State charged Defendant with one count of first-degree sodomy and two counts of second-degree rape as to JW.

*Victim SD – Count 16*

SD met Defendant in 2017 at a party, and they became friends and messaged via social media. They were hanging out at Defendant's home one day in the summer of 2017. The two were lying naked in Defendant's bed and kissing when Defendant engaged in vaginal intercourse with SD, despite her statement that she would not have sex. Defendant stopped having intercourse with SD when she began to cry. The State charged the Defendant with one count of second-degree rape as to SD.

*Victim KO – Count 17*

KO met Defendant in February 2017 through a mutual friend, and they were drinking at the home of the friend. KO had cuts on her arms, which Defendant knew, and he repeatedly and painfully grabbed KO's arm and pulled her toward his lap. Defendant then pulled KO into a closet by her arm. KO told Defendant that she did not want to have sex, but he nevertheless engaged in vaginal intercourse with her. Defendant physically prevented KO from leaving the

closet multiple times, telling her to "let him finish." KO escaped the closet when her friend opened the door. The State charged Defendant with one count of second-degree rape as to KO.

*Victim AH – Alternative Counts 18 or 19*

AH met Defendant in August 2018 through a mutual friend. They were hanging out with others, then ended up at Defendant's home. Defendant gave AH an unopened, clear Gatorade, and she took one sip. Defendant then crushed a blue pill into powder, and offered the powder to AH, which she refused. AH observed one of Defendant's cats on the table near the powder, and recorded a short video showing the powder. The trial court admitted this video as Exhibit 19. A short time later, AH noticed a blue substance in her Gatorade bottle. AH did not drink any of the Gatorade after the first sip and did not consume any of the blue substance.

AH went upstairs to be near other people because she had become uncomfortable. She suddenly found herself alone with Defendant in his bedroom when the others appeared to receive messages on their phones simultaneously, got up, and left the room. AH noticed a gun on Defendant's nightstand. Defendant began pulling AH's arm, trying to get her to lay down on the bed and ignoring her efforts to stop him. Defendant began touching AH's body, then stood up and unzipped his pants and attempted to get AH to perform oral sex. Defendant touched his penis to AH's left cheek as he tried to force himself into her mouth. AH evaded the attempt, set off her phone's ringtone, and pretended to receive a call from her father. AH ran from the room and locked herself in the bathroom. AH called her friend, DF, who came and picked her up. DF testified, recounting that AH told him someone was trying to sexually assault her, he immediately went to pick her up, and found her shaken and crying. The State charged Defendant with one count of attempted second-degree sodomy as to AH, or in the alternative, one count of second-degree sexual abuse.

9

*Additional Evidence*

A forensic interviewer with the Child Advocacy Center—who also had extensive professional experience working with victims of domestic abuse and as a victim advocate—testified. She stated that abuse victims, especially children, may disclose the abuse in stages, including a common stage in which the victim recants their disclosure. The forensic interviewer also explained that victims of sexual abuse or domestic violence may feel torn because they may care about the abuser. In addition, the victim may depend on the abuser for their well-being, for financial support, for emotional support, for friendship, or even as a romantic partner. The forensic interviewer testified that it was common for a victim to not resist an attack. She explained that victims may feel ashamed about what happened, may feel they did something to contribute to their abuse, may blame themselves, or may fear consequences for themselves.

Finally, a detective for the St. Louis County Police Department testified regarding her investigation of the charged crimes. The detective began her investigation when CC disclosed that Defendant had assaulted her. From there, the detective learned of other victims, and saw the following pattern emerge:

> A. So through the course of my investigation, as victims came forward, I learned that sexual assaults occurred wherein the victims were forcibly raped or—and/or raped once the victims were to the point of incapacitation.
> Q. They were drunk?
> A. Yes.
> Q. They were too drunk?
> A. Yes.

The State published and played for the jury, without audio, Exhibit 17, a video of GG. The detective testified that GG "appear[ed] to be slumped over and unconscious on a couch," covered with a blanket, wearing a sombrero, and with a bottle of alcohol placed on her. Defendant also appeared in the video, smiling and gesturing over GG's body. The State rested.

10

*Conviction and Sentencing*

Outside the presence of the jury, the trial court found Defendant to be a predatory sexual offender. The trial court further stated that it would "give the jury a brief second stage, assuming they convict [Defendant] of more than one count to make that determination [of predatory sexual offender status] as well."

The jury deliberated for just under three hours before convicting Defendant of 16 counts and acquitting him of two counts.[3] The 16 guilty verdicts involved eight victims and included five counts of first-degree rape, four counts of second-degree rape, one count of first-degree sodomy, five counts of second-degree sodomy, and one count of attempted second-degree sodomy. The jury further found Defendant to be a predatory sexual offender beyond a reasonable doubt.

After receiving a sentencing assessment report, victim-impact statements, statements from Defendant and his family, and arguments of counsel, the trial court announced "[a]t this time the Court is going to enter judgment consistent with the law and the findings of the jury." The trial court sentenced Defendant to 16 consecutive terms of life imprisonment with eligibility for parole after 83 years. Defendant appeals. Additional facts are stated throughout this opinion, as relevant to our discussion herein.

## **Discussion**

In 42 points on appeal, Defendant challenges the jury instructions, the admission of certain testimony, the exclusion of certain evidence, the sufficiency of the evidence, the

---

[3] The jury acquitted Defendant of one count of second-degree rape as to MP (count 7) and one count of second-degree rape as to SD (count 16). Counts 18 and 19, as to AH, were submitted in the alternative so the jury could convict Defendant of one or the other, or neither, of those two counts.

imposition of consecutive sentences, the length of sentences imposed, and the jury's finding that he is a predatory sexual offender.[4]

### *Standard of Review*

Defendant's appeal implicates multiple standards of review, namely plain error, sufficiency of the evidence, and *de novo* review for statutory interpretation.

#### *Plain Error*

This Court can review claims of error that are not properly preserved only for plain error. Rule 30.20. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id*. We exercise our discretion to review for plain error only when the appellant establishes facially substantial grounds to believe that the trial court committed evident, obvious, and clear error that resulted in manifest injustice or a miscarriage of justice. *State v. Boston*, 530 S.W.3d 588, 590 (Mo. App. E.D. 2017). Further, "[p]lain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome-determinative." *Id*.

#### *Sufficiency of the Evidence*

When reviewing a challenge to the sufficiency of the evidence, we limit our review to determining whether sufficient evidence was adduced from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *Clark*, 490 S.W.3d at 707; *State v. Dickerson*, 609 S.W.3d 839, 843 (Mo. App. E.D. 2020). We consider the evidence and all reasonable inferences drawn from it in the light most favorable to the jury's verdict, and we disregard all evidence and inferences to the contrary. *Clark*, 490 S.W.3d at 707; *Dickerson*, 609 S.W.3d at 844. As the trier of fact, the jury alone determines the credibility of the witnesses, and

---

[4] The points are numbered one through 40. Defendant actually presents 42 points, however, because point numbers 32 and 33 each appear twice.

is free to believe or disbelieve all, part, or none of any witness's testimony. *Dickerson*, 609 S.W.3d at 844. We do not reweigh the evidence. *Id*. When a challenge to the sufficiency of the evidence raises an issue of statutory interpretation, we conduct *de novo* review. *Id*.

*De Novo Review and Statutory Interpretation*

Statutory interpretation is a question of law that we review *de novo*. *State v. Johnson*, 524 S.W.3d 505, 510 (Mo. banc 2017). When interpreting a statute, we must ascertain the intent of the legislature from the language used, and if possible, give effect to that intent. *Id*. We give the language used in the statute its plain and ordinary meaning. *Id.* "We resort to statutory construction only when statutory language is ambiguous; otherwise, we must give effect to the statute as written." *State v. Haynes*, 564 S.W.3d 780, 784 (Mo. App. E.D. 2018). "A statute is considered ambiguous only when we cannot ascertain the legislative intent from the language of the statute by giving the language its plain and ordinary meaning." *Id*. "We may not create an ambiguity where the words of a statute are plain." *State v. Contreras-Cornejo*, 526 S.W.3d 146, 153 (Mo. App. W.D. 2017). Nor will we interpret statutes in ways that yield unreasonable or absurd results. *Henry v. State*, 666 S.W.3d 177, 185 (Mo. App. W.D. 2023).

***Analysis***

We now consider Defendant's 42 claims of error. For the sake of clarity and efficiency, we consider some of Defendant's points out of order and consider similar points together.

*Point 1*

In his first point on appeal, Defendant claims the trial court plainly erred by giving Instruction Number 37, in that the instruction omitted the proper definition of the term "deviate sexual intercourse." Defendant contends the failure to include the proper definition of "deviate sexual intercourse" relieved the State of the burden of proving all the elements of the crimes of

13

first-degree, second-degree, and attempted second-degree sodomy as charged in counts 3, 9, 10, 11, 12, 13, and 18.

The State charged Defendant with one count of first-degree sodomy, five counts of second-degree sodomy, and one count in the alternative of attempted second-degree sodomy. The jury convicted Defendant of all seven sodomy counts. "A person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." Section 566.060.1. "A person commits the offense of sodomy in the second degree if he or she has deviate sexual intercourse with another person knowing that he or she does so without that person's consent." Section 566.061.1.

The term "deviate sexual intercourse" as used in both the first- and second-degree sodomy statutes means:

> [A]ny act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the penis, female genitalia, or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim[.]

Section 566.010(3) RSMo, (2016 & Supp. 2023).

The State proffered Instruction Number 37, which contained all of the statutory definitions the jury needed to consider in its deliberations of all of the charges. "The terms used in these instructions are defined as follows:  Deviate Sexual Intercourse. Means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person." This definition of "deviate sexual intercourse," however, excluded the latter portion of the statutory definition that provides "or a sexual act involving the penetration, however slight, of the penis, female genitalia, or the anus by a finger, instrument or object done for the purpose of

14

arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim[.]" *Id.*

Defendant did not object to the proffered instruction. Therefore, Defendant's claim of error is not preserved for our review, and we may consider it only for plain error. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "When the unpreserved allegation concerns instructional error, plain error exists when it is clear that the circuit court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted." *State v. Zetina–Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016). "Plain error exists when an instruction omits an essential element and the evidence establishing the omitted element was seriously disputed." *Id.* at 811. (quoting *State v. Stover*, 388 S.W.3d 138, 154 (Mo. banc 2012)).

Instruction Number 37 did not define fully the term "deviate sexual intercourse" as required by MAI-CR 4th 420.14 and its Notes on Use 2 and 5(a). As the State concedes, Instruction Number 37 was erroneous. *State v. Jones*, 519 S.W.3d 818, 826 (Mo. App. E.D. 2017). Nevertheless, the State argues that the erroneous instruction did not result in manifest injustice. We agree.

In determining whether a jury instruction misdirected the jury, we are more inclined to reverse when the erroneous instruction excused the State from its burden of proof on a contested element of the crime, rather than merely allowing an incorrect word or some other ambiguity to exist. *Id.* The absence of a required definition could effectively omit an essential element of the offense. *Id.* A verdict-directing instruction that effectively omits an essential element rises to the level of plain error when the evidence establishing the omitted element was seriously disputed.

15

*Id.* On the other hand, when the evidence establishing the omitted element was not seriously disputed, the omission has no effect on the jury's verdict, and plain error relief is not warranted. *Id.*

The record sufficiently supports our conclusion that Defendant never seriously disputed at trial that the sexual acts in which he engaged with the victims were done for the purpose of arousing or gratifying the sexual desire of any person. Defendant pursued two separate defenses: first, that he did not commit the charged acts; and second, that if he did commit the charged acts, he did so with consent. The defense argued in opening, "Ladies and gentlemen, the evidence is going to show you that we are all here for regret. … This case involves nine of my client's ex-girlfriends, or acquaintances." In closing, the defense reiterated, "In Opening I did tell you that this case was about nine ex-girlfriends or ex-acquaintances. And I did tell you that this case was about rape (sic). But it was actually about regret." Neither defense involved Defendant arguing that he committed the conduct charged, but did so without "the purpose of arousing or gratifying the sexual desire of any person."

In addition, the testimony of the victims led to a reasonable inference that Defendant committed the charged acts "for the purpose of arousing or gratifying the sexual desire of any person," namely himself. For instance, the record reveals that Defendant showed CC videos of other girls doing "sexual things to him," and said he wanted CC to do similar things. Defendant asked JW if she wanted to perform oral sex on him, although in cruder terms, before forcing his penis into her mouth and instructing her how to improve her performance by not using her teeth so much. Defendant began kissing MP and telling her that he wanted to perform different sex acts with her. MP testified that she wanted to go home, but Defendant refused until she engaged

16

in additional sex acts with him. Defendant propositioned AH and kept touching her body before trying to force his penis into her mouth.

None of the charged conduct could be reasonably viewed as accidental touching or touching for any purpose other than for Defendant's sexual arousal or gratification. Defendant's mental state was not seriously disputed at trial, and the omission had no effect on the verdict. Defendant is not entitled to relief on this claim. *Id*. at 827 (plain-error relief not warranted when evidence establishing omitted element was not seriously disputed and did not affect jury verdict). We deny Defendant's first point.

*Point 2*

In Point 2, Defendant claims the trial court plainly erred in denying his objection to witness DP's testimony about what CC had told DP, namely that Defendant had forced himself on CC. Defendant argues DP's testimony was hearsay, and was not admissible pursuant to the excited-utterance exception.

Although Defendant timely objected to DP's testimony that CC told him that Defendant forced himself on her, Defendant did not include this issue in his motion for new trial. Thus, Defendant's claim of error is not properly preserved, and we can review only for plain error. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.

We need not decide whether the trial court plainly erred in admitting DP's testimony. Even assuming, without deciding, that the trial court committed evident, obvious, and clear error when it admitted the disputed testimony, we find no prejudice, much less manifest injustice or miscarriage of justice. CC had already testified that she told DP about Defendant's assault. As a

17

result, DP's testimony regarding CC's statement to him was cumulative. "Cumulative evidence is additional evidence that reiterates the same point." *State v. Brandolese*, 601 S.W.3d 519, 536 (Mo. banc 2020). A defendant may not assert prejudice when the challenged evidence is cumulative to other related admitted evidence. *Id.*

Defendant cannot establish prejudice, much less meet the higher burden of establishing manifest injustice or miscarriage of justice as required to obtain relief under plain-error review. We deny Defendant's second point.

*Points 3 and 6*

In his third and sixth points, Defendant challenges his conviction for first-degree rape of JH. In count 6, the State charged that Defendant committed first-degree rape "in that on or between December 1, 2017 and February 28, 2018, in the county of St. Louis, State of Missouri, the defendant knowingly had sexual intercourse with JH, a person who was incapacitated or lacked capacity to consent." "A person commits the offense of rape in the first degree if he or she has sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." Section 566.030.

In Point 3, Defendant claims the trial court plainly erred in admitting his statements to JH that the two had sex because there was insufficient evidence to establish the *corpus delicti* of first-degree rape. Defendant argues the evidence presented was insufficient to corroborate that the offense of first-degree rape occurred so as to render his statement to JH admissible. Again, Defendant's claim of error is not properly preserved, and we can review only for plain error. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.

18

"Missouri adopted the *corpus delicti* rule from English common law to avoid conviction of a criminal defendant without corroborating evidence independent of the defendant's out-of-court confession or 'extrajudicial admissions.'" *State v. Burrow*, 680 S.W.3d 162, 167 (Mo. App. E.D. 2023). "Extrajudicial admissions or statements of the defendant are not admissible in the absence of independent proof of the commission of an offense, i.e. the corpus delicti." *Id*. (quoting *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005)).

However, absolute proof that a crime was committed, independent of a defendant's extrajudicial statement or confession, is not required. *Id*. at 167. "All that is required is evidence of circumstances tending to prove the corpus delicti corresponding with the confession. *Slight corroborating facts* are sufficient to establish the corpus delicti." *Id*. at 167-68 (emphasis in original) (quoting *Madorie*, 156 S.W.3d at 355). Likewise, our Court has instructed that where there is evidence of corroborating circumstances, independent of the defendant's extrajudicial statement that tends to prove the offense by confirming matters related in the statement, both the corroborating circumstances and the defendant's statement may be considered in determining whether the *corpus delicti* has been established. *See id*. at 168 (stating evidence of corroborating circumstances, which tends to prove offense by confirming matters related in confession, may be considered in determining whether *corpus delicti* established).

To establish the *corpus delicti* of first-degree rape of JH, there must be independent evidence corroborating Defendant's statement that he and JH had sex. We find there is corroborating evidence in the record here. JH drank alcohol with Defendant, and he also gave JH three marijuana blunts and instructed her to smoke all three herself, which she did. JH was unsure how much she had to drink although she felt "very intoxicated." Eventually, JH testified, she "blacked out" on a couch in the front living room of Defendant's home while watching a

19

movie. JH awakened on a different couch in a different room at the back of the house, and found her pants and underwear had been removed. She did not recall removing her pants or underwear, and felt pain in her vagina. She testified to feeling "[a] lot of discomfort. I could obviously tell that, um, something had happened." JH also saw blood on the couch. She asked Defendant what happened, and he told her they had sex. JH testified that she felt confused, because she did not recall either wanting to have sex or actually having sex.

This evidence amounts to more than slight corroborating facts. *Id*. at 168. JH's observations when she awoke on a different couch in a different room in a different part of the house, experiencing pain and discomfort in her genitals, aware that "something had happened," with her pants and underwear removed, and with blood on the couch, were highly corroborative of Defendant's specific statement that he had sex with JH. *See id.*

The State presented independent evidence of circumstances corroborating Defendant's extrajudicial admission to the charged crime of first-degree rape of JH. Accordingly, we find no error, plain or otherwise, in the trial court's admission of Defendant's extrajudicial statement. We deny Defendant's third point.

In his sixth point, Defendant claims the trial court erred in overruling Defendant's motion for judgment of acquittal at the close of all the evidence, sentencing Defendant, and entering a judgment of conviction as to count 6, first-degree rape of JH. Defendant argues there was insufficient evidence to establish that JH lacked the capacity to consent and that he was aware of that fact.

When reviewing a challenge to the sufficiency of the evidence, we limit our review to determining whether sufficient evidence was adduced from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *Clark*, 490 S.W.3d at 707; *Dickerson*, 609

20

S.W.3d at 843. "Because a person's mental state is rarely capable of being proven with direct evidence, '[p]roof of a requisite mental state is usually established by circumstantial evidence and permissible inferences.'" *State v. Ingram*, 662 S.W.3d 212, 222 (Mo. App. E.D. 2023) (quoting *State v. Kinsella*, 578 S.W.3d 802, 814-15 (Mo. App. E.D. 2019)) (citation omitted).

Missouri law recognizes that "consent or lack of consent may be expressed or implied." Section 556.061(14). Further, assent does not constitute consent when "given by a person who by reason of youth, mental disease or defect, *intoxication, a drug-induced state*, *or any other reason* is manifestly unable *or* known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense." Section 556.061(14)(b) (emphases added).

In *State v. Dickerson*, the victim drank an unusually large amount of alcohol, became ill, and passed out fully clothed on a bed. 609 S.W.3d at 841. The victim awoke to find someone touching her genitals through her clothing, which stopped when there was a knock at the bedroom door. *Id.* The victim awoke a second time when the defendant locked the bedroom door, and proceeded to touch the victim's genitals underneath her clothing. *Id*. at 842. The defendant then removed the victim's pants, performed oral sex on her, and tried unsuccessfully to have vaginal intercourse with her before being interrupted again by knocking at the bedroom door. *Id*. The victim testified that she lay still and feigned sleep during these acts because she was scared, tired, felt impaired from being intoxicated, and was not using her best judgment. *Id*. This Court held that a jury could reasonably infer "that Victim was manifestly unable or known by [the defendant] to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct so as to be incapable of consent by reason of intoxication." *Id*. at 847.

21

Here, as in *Dickerson*, the evidence was sufficient to establish that JH was "manifestly unable or known by [Defendant] to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense." *Id*. Stated somewhat differently, the State adduced substantial evidence addressing JH's level of intoxication sufficient to allow a jury finding that she was incapable of consent. Defendant drank alcohol with JH, and JH estimated she and the other persons in the car drank half a bottle of Smirnoff. Defendant also provided JH with three marijuana blunts, which she smoked by herself as Defendant directed. JH testified that she blacked out from intoxication on a couch in the front living room at Defendant's house. After blacking out, JH was moved from one part of the house to another, had her pants and underwear removed, and was penetrated until she bled.

More specifically, the jury could reasonably infer that Defendant had to move JH's unconscious, or nearly unconscious, body to the second living room before or during the sexual assault. As such, the jury could reasonably infer that JH was manifestly unable or that Defendant was aware that JH was unable to consent to intercourse. *See State v. Fairley*, 676 S.W.3d 463, 470 (Mo. App. S.D. 2023) (fact finder could infer that defendant's positioning victim and removing her clothes shows victim was incapable of consent because of intoxication, and that defendant engaged in charged conduct knowing victim was unable to make reasonable judgment as to nature or harmfulness of charged conduct).

From this evidence, a juror could reasonably find, without making a forced or speculative inference, that JH was manifestly unable to make a reasonable judgment as to the nature or harmfulness of the conduct so as to be incapable of consent by reason of intoxication. Further, a juror reasonably could find that Defendant knew JH was unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged. We deny Defendant's sixth point.

22

Defendant claims the trial court erred, or plainly erred, in excluding evidence of his prior consensual sexual activity with KS. He contends the evidence of prior sexual activity was admissible pursuant to an exception to the "rape shield" law, section 491.015. Specifically, Defendant argues that this evidence was admissible as reasonably contemporaneous evidence of KS's sexual conduct with him to prove consent as a defense to the alleged offense. He also contends that KS's testimony made it appear as if the two had not met in person prior to the night of the charged conduct.

The State filed a motion *in limine* requesting that the trial court preclude Defendant from introducing into evidence or asking any questions regarding any of the victims' sexual history. Defendant filed an offer of proof in response with excerpts from KS's deposition, wherein she testified to engaging in consensual sexual intercourse with Defendant five to seven times before the incident charged in this case. The discussions among the parties and the court regarding the motions *in limine* are not included in the record before us. Prior to trial, the court made a record referencing the motions *in limine*. In placing the motions *in limine* on the record, the court stated "[w]e have had lengthy discussions with regards to Rape Shield, and we all understand where the guardrails are." The record before us contains no additional details about what the "guardrails" encompassed. At trial, Defendant did not seek to elicit testimony from KS about her prior consensual sexual activity with Defendant.

"[W]here a court excludes evidence prior to trial, the ruling is interlocutory only and subject to change during trial." *State v. Stiff*, 626 S.W.3d 916, 922 (Mo. App. E.D. 2021). "The proponent of the evidence must attempt to admit the evidence at trial and make an offer of proof to preserve the issue for appellate review." *Id*. Although Defendant raised the issue prior to trial

of KS's previous consensual sexual activity with him in response to the State's motion *in limine*, Defendant did not attempt to elicit the contested evidence at trial. "An offer of proof made before trial at a hearing on a motion *in limine* will not suffice. To preserve the matter for appellate review, the offer of proof must be made during trial." *State v. Yoakum*, 668 S.W.3d 327, 330 (Mo. App. S.D. 2023) (quoting *State v. Marshall*, 131 S.W.3d 375, 377 (Mo. App. E.D. 2004) (internal citations omitted)).

Because the defense did not attempt to elicit evidence at trial of KS's prior consensual sexual activity with Defendant and did not make an offer of proof of the testimony that KS would have provided, this claim is not preserved for appellate review. *Id*. Therefore, we may review only for plain error. Rule 30.20. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id*. "Plain error must be outcome determinative." *Stiff*, 626 S.W.3d at 922.

Section 491.015.1 RSMo. (Supp. 2023), commonly called the "Rape Shield Statute," prohibits opinion and reputation evidence of the victim's prior sexual conduct, acts, or practices in prosecutions under Chapter 566 or 568. Evidence of specific instances of the victim's prior sexual conduct, or the absence of such conduct, is inadmissible, except when enumerated exceptions apply to those specific instances, including reasonably contemporaneous evidence of the sexual conduct of the victim with the defendant to prove consent as a defense to the alleged crime. Section 491.015.1(1) RSMo. (Supp. 2023). Even when the evidence of the victim's sexual conduct is offered pursuant to an enumerated exception, it is admissible only to the extent that the court finds the evidence relevant to a material fact or issue. Section 491.015.2 RSMo. (Supp. 2023).

At trial, the defense did not seek to elicit evidence from KS about instances when she engaged in consensual sexual intercourse with Defendant before the conduct charged here. KS testified, however, that she engaged in consensual oral sex with Defendant prior to the night in question in November 2016. KS also testified that she and Defendant hung out together on the weekends during the previous August.

The record is silent as to what specific evidence the trial court excluded under the Rape Shield Statute. The record is also silent as to the timeframe in which the excluded evidence of sexual activity occurred. As such, Defendant cannot show that the evidence may have been admissible, and specifically not pursuant to the exception for reasonably contemporaneous consensual sexual activity, because Defendant did not seek to proffer it during cross-examination. As a result, it cannot be said that the trial court committed error that was evident, obvious, and clear.

Further, Defendant has not carried his burden of demonstrating outcome-determinative manifest injustice. Defendant argues that KS's testimony made it appear as if the two had not met in person before the night in November 2016 when the charged conduct occurred. But KS testified that she had hung out with Defendant over the weekends in August, some three months before the conduct charged here. Similarly, KS admitted on cross-examination that she had previously engaged in consensual oral sex with Defendant before the night in question. KS also testified that she agreed to perform oral sex on Defendant, and in fact did so, immediately before the charged conduct occurred. Therefore, Defendant still presented evidence to the jury that KS and Defendant had engaged in consensual sexual activity before the charged conduct occurred.

Defendant has not demonstrated that the purported exclusion of evidence regarding Defendant and KS's prior instances of consensual sexual intercourse resulted in evident, obvious,

25

and clear error leading to outcome-determinative manifest injustice. We deny Defendant's fourth point.

*Point 5*

In Point 5, Defendant claims the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence, sentencing him, and entering a judgment of conviction as to count 4, first-degree rape of GG. Defendant argues there was insufficient evidence to establish that GG lacked the capacity to consent and that he was aware of that fact.

When reviewing a challenge to the sufficiency of the evidence, we limit our review to determining whether sufficient evidence was adduced from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *Clark*, 490 S.W.3d at 707; *Dickerson*, 609 S.W.3d at 843. "Because a person's mental state is rarely capable of being proven with direct evidence, '[p]roof of a requisite mental state is usually established by circumstantial evidence and permissible inferences.'" *Ingram*, 662 S.W.3d at 222 (quoting *Kinsella*, 578 S.W.3d at 814-15) (citation omitted).

Count 4 charged Defendant committed first-degree rape "in that on or between September 1, 2017 and December 31, 2017, in the county of St. Louis, State of Missouri, the defendant knowingly had sexual intercourse with GG, a person who was incapacitated or lacked the capacity to consent." "A person commits the offense of rape in the first degree if he or she has sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." Section 566.030.

Missouri law recognizes that "consent or lack of consent may be expressed or implied." Section 556.061(14). Further, assent does not constitute consent when "given by a person who by reason of youth, mental disease or defect, *intoxication, a drug-induced state*, *or any other*

26

*reason* is manifestly unable *or* known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense." Section 556.061(14)(b) (emphases added).

Again, we find *State v. Dickerson* instructive, as discussed above, where this Court held that a jury could reasonably infer "that Victim was manifestly unable or known by [the defendant] to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct so as to be incapable of consent by reason of intoxication." 609 S.W.3d at 847. Here, as in *Dickerson*, the evidence was sufficient to establish that GG was "manifestly unable or known by [Defendant] to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense." *Id.* Stated somewhat differently, the evidence was sufficient to establish that GG lacked capacity to consent and that Defendant was aware GG lacked capacity to consent. Defendant offered GG and her friend, AA, alcohol. This was GG's first experience drinking alcohol, and she felt "completely out of it." She then went with AA, Defendant, and two other men to Defendant's home where GG testified that she "kind of blacked in and out." She remembered that AA went home, and the next thing she remembered after that was Defendant being on top of her on the living room couch with his penis in her vagina. GG said "no," and tried unsuccessfully to push Defendant off her. Defendant continued to hold GG down, and covered her mouth with his hand. GG testified that when she "came to" again, the two other men were also assaulting her.

AA testified that GG was "very not herself" and was slurring her words after drinking alcohol that evening. She confirmed that GG was "having trouble functioning normally" and "seemed pretty out of it."

The trial court admitted State's Exhibits 17 and 18, a video of GG and a still photograph

of GG on a couch taken from the video, respectively. GG identified herself in the still photograph. During the detective's testimony, the State published and played for the jury, without audio, Exhibit 17, the video of GG. The video was not filed with this Court, but the detective testified that GG "appear[ed] to be slumped over and unconscious on a couch," covered with a blanket, wearing a sombrero, and with a bottle of alcohol placed on her body. Defendant also appeared in the video, smiling and gesturing over GG's body. A reasonable jury could infer that Defendant began having sex with GG when she was passed out drunk.

From this evidence, a juror could reasonably find, without making a forced or speculative inference, that GG was manifestly unable to make a reasonable judgment as to the nature or harmfulness of the conduct so as to be incapable of consent by reason of intoxication. Further, a juror reasonably could find that Defendant knew GG was unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged. We deny Defendant's fifth point.

*Points 7 through 12 and Points 13 through 16*

In Points 7 through 12, Defendant claims the trial court plainly erred in sentencing him to consecutive terms of imprisonment on counts 3, 9, 10, 11, 12, and 18, which charge Defendant with second-degree sodomy. Defendant contends that section 558.026 does not require that a sentence for second-degree sodomy be ordered served consecutively to any other sentence. Likewise, in Points 13 through 16, Defendant claims the trial court plainly erred in sentencing him to consecutive terms of imprisonment on counts 8, 14, 15, and 17, which charge Defendant with second-degree rape. Defendant contends that section 558.026 does not require that a sentence for second-degree rape be ordered served consecutively to any other sentence. We address these claims together as they all involve the trial court's discretion to impose consecutive sentences under section 558.026.

28

Defendant did not object when the trial court imposed the 16 consecutive sentences. "Where a defendant does not raise the issue of infirmities in the sentencing process, the matter is not preserved for review." *Contreras-Cornejo*, 526 S.W.3d at 152. Because none of Defendant's claims of error in Points 7 through 16 are preserved, we can review these challenges only for plain error. Rule 30.20. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id*.

Section 558.026.1 RSMo. (2016 & Supp. 2023) provides that:

> Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except in the case of multiple sentences of imprisonment imposed *for any offense committed during or at the same time as, or multiple offenses of, the following felonies*:
>
> (1) Rape in the first degree, forcible rape, or rape;
> (2) Statutory rape in the first degree;
> (3) Sodomy in the first degree, forcible sodomy, or sodomy;
> (4) Statutory sodomy in the first degree; or
> (5) An attempt to commit any of the felonies listed in this subsection. In such case, the sentence of imprisonment imposed for any felony listed in this subsection or an attempt to commit any of the aforesaid *shall* run consecutively to the other sentences. The sentences imposed for any other offense *may* run concurrently.

(Emphases added). The primary rule of statutory construction is to ascertain the intent of the legislature by construing words used in the statute in their plain and ordinary meaning. *Contreras-Cornejo*, 526 S.W.3d at 152. We resort to statutory construction only when the language of the statute is ambiguous. *Haynes*, 564 S.W.3d at 784. Here it is not.

As the language of the statute plainly states, the trial court shall impose consecutive sentences for multiple counts of the listed offenses, including first-degree rape and first-degree sodomy. Section 558.026.1; *Contreras-Cornejo*, 526 S.W.3d at 153. In addition, the language of the statute plainly states that the trial court shall impose consecutive sentences for any offenses

committed during or at the same time as the enumerated offenses. Section 558.026.1; *Contreras-Cornejo*, 526 S.W.3d at 153. In sum, the statute makes clear that multiple sentences for the listed felonies, including first-degree rape and first-degree sodomy, must run consecutively to each other, as well as consecutively to sentences for non-listed offenses committed during or at the same time as a listed offense. *Id*.

Here, section 558.026.1 required the trial court to sentence Defendant to consecutive sentences for each of the five counts of first-degree rape (counts 1, 2, 4, 5, and 6) as well as the one count of first-degree sodomy (count 13). In addition, section 558.026.1 required the sentence for second-degree sodomy against CC (count 3) to run consecutively to the charge of first-degree rape (count 1) committed against CC at the same time.

The statute makes equally clear that "[t]he sentences imposed for *any other offense may* run concurrently." Section 558.026.1 (emphasis added). Stated somewhat differently, the trial court was free to exercise its discretion to order the sentences for the counts of second-degree rape and second-degree sodomy to run either concurrently with one another or consecutively to one another. "[T]rial courts have broad discretion in their sentencing function." *Huck v. State*, 341 S.W.3d 136, 141 (Mo. App. E.D. 2011). "The trial court has a duty to impose a sentence on a case-by-case basis, and to fashion the punishment to both the crime and the criminal. We assume the trial court's experience and expertise enables the trial court to consider appropriate sentencing factors and to disregard improper matters." *Id*. (quoting *State v. Mort,* 321 S.W.3d 471, 485 (Mo. App. S.D. 2010)).

Here, the record supports a reasonable inference that the trial court exercised its discretion to impose consecutive sentences, and did not sentence Defendant based on a mistaken belief that the law required imposition of consecutive sentences. The court obtained a sentencing

assessment report, heard victim-impact statements, and heard statements from Defendant and his family. In his lengthy statement to the court, Defendant did not accept responsibility for any wrongdoing on his part nor harm to the victims. Instead, Defendant criticized the media, the victims, the police, the State, the predominantly female jury, and the preparer of the sentencing assessment report for harm inflicted on him. In Defendant's lengthy statement, he told the court "I do not regret anything in life." The trial court also heard argument from the State and the defense. The defense argued for leniency while the State argued that the multiple sentences "each need to run consecutive to each other." After the arguments of counsel, the trial court announced "[a]t this time the Court is going to enter judgment consistent with the law and the findings of the jury." The court sentenced Defendant to 16 consecutive life sentences.

Defendant cites *State v. Green*, 597 S.W.3d 229, 239-40 (Mo. App. W.D. 2019), for the proposition that section 558.026 does not require a sentence for second-degree sodomy or second-degree rape to be served consecutive to any other sentence. First, this statement is not entirely correct because section 558.026.1 makes clear, as discussed earlier, that sentences for the listed felonies must run consecutively to sentences for non-listed offenses committed at the same time. *Contreras-Cornejo*, 526 S.W.3d at 153. Second, *Green* is distinguishable. In pronouncing the consecutive sentences imposed in *Green*, the trial court noted that "[m]y reading of 558.026 is that those sentences must be served consecutively and it will be my order that they be served consecutively and that [the defendant] will receive credit for time served." 597 S.W.3d at 239. The *Green* court's pronouncement reflected the court's mistaken belief that section 558.026 required it to impose consecutive sentences for second-degree sodomy. *Id*. at 240.

The record here, however, does not demonstrate that the trial court was mistaken about the law. The court obtained a sentencing assessment report, accepted victim-impact statements,

31

heard statements from Defendant and his family, and listened to arguments from both parties. Thereafter, the trial court announced "[a]t this time the Court is going to enter judgment *consistent with the law* and the findings of the jury." (Emphasis added). The law allows imposition of consecutive sentences for non-listed offenses in the discretion of the trial court when, as here, the court orally pronounces specifically that the sentences shall run consecutively. Section 558.026.1; *see also Green*, 597 S.W.3d at 240 n.13 (stating that "the trial court will have the *discretion* but is not statutorily required to order the sentence for sodomy in the second degree to run consecutive to any sentence imposed for [false imprisonment]") (emphasis in original).

The trial court expressed no mistaken belief about the requirements of section 558.026. The jury convicted Defendant of 16 sexual offenses committed against eight different victims, the majority of whom were teenagers, and many of whom were experiencing events in their lives that made them especially vulnerable to Defendant's assaults. The court had the benefit of a sentencing assessment report, and heard Defendant's statement.

In this case, Defendant has not shown that the trial court held a mistaken belief that Defendant's sentences had to run consecutively. Instead, the trial court merely stated it would sentence Defendant "consistent with the law," which in fact it did, exercising its discretion to impose a consecutive sentence for each offense. Absent support in the record, we will not presume the trial court failed to correctly understand and apply the law and thus committed error that is evident, obvious, and clear in imposing consecutive sentences. We find no error, plain or otherwise, in the court's imposition of a consecutive sentence for each of multiple counts of second-degree sodomy and second-degree rape.

32

In any event, given our disposition of Points 17 through 26 as set out below, the trial court will have the opportunity on remand to consider the imposition of consecutive sentences on the affected counts. We deny Defendant's Points 7 through 16.

*Points 17 through 26*

In Points 17 through 26, Defendant claims the trial court plainly erred in sentencing him to a life sentence for each charge of second-degree rape, second-degree sodomy, and attempted second-degree sodomy for which the jury had found him guilty. Defendant argues that second-degree sodomy (counts 3, 9, 10, 11, and 12), second-degree rape (counts 8, 14, 15, and 17), and attempted second-degree sodomy (count 18) are not subject to a mandatory life sentence under section 566.125, the statute defining "persistent" and "predatory" sexual offenders and providing for enhanced penalties for each. Defendant contends that the life sentence imposed for the offenses in each of the listed counts exceeds the statutory maximum and constitutes plain error. The State concedes that the trial court erred in this respect.

Defendant acknowledges that his claims of error in Points 17 through 26 are not preserved, and he requests plain-error review. Rule 30.20. This Court can review claims of error that are not properly preserved only for plain error. *Id*. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id*. We exercise our discretion to review for plain error only when the defendant establishes facially substantial grounds to believe that the trial court committed evident, obvious, and clear error that resulted in manifest injustice or a miscarriage of justice. *Boston*, 530 S.W.3d at 590. "We have found manifest injustice and granted plain-error relief when a trial court imposed a sentence that exceeded the maximum penalty permitted by law." *State v. Boesing*, 307 S.W.3d 218, 219 (Mo. App. E.D. 2010).

33

Defendant's challenge also requires us to interpret section 566.125. Statutory interpretation is a question of law that we review *de novo. Johnson*, 524 S.W.3d at 510. When interpreting a statute, we must ascertain the intent of the legislature from the language used, and if possible, give effect to that intent. *Id*. We give the language used in the statute its plain and ordinary meaning. *Id.* "We resort to statutory construction only when statutory language is ambiguous; otherwise, we must give effect to the statute as written." *Haynes*, 564 S.W.3d at 784.

The jury found Defendant to be a predatory sexual offender pursuant to section 566.125.[5] As relevant here, section 566.125 provides:

> 1. The court shall sentence a person to an extended term of imprisonment if it finds the defendant is a persistent sexual offender and has been found guilty of attempting to commit or committing the following offenses:
>> (1) Statutory rape in the first degree or statutory sodomy in the first degree;
>> (2) Rape in the first degree or sodomy in the first degree;
>> (3) Forcible rape;
>> (4) Forcible sodomy;
>> (5) Rape;
>> (6) Sodomy.
>
> ***
>
> 4. The court shall sentence a person to an extended term of imprisonment as provided for in this section if it finds the defendant is *a predatory sexual offender* and has been found guilty of committing or attempting to commit any of the offenses listed in subsection 1 of this section or committing child molestation in the first or second degree or sexual abuse when classified as a class B felony.
>
> 5. For purposes of this section, a "*predatory sexual offender*" is a person who:
>> ***
>> *(3) Has committed an act or acts against more than one victim which would constitute an offense or offenses listed in subsection 4 of this section, whether or not the defendant was charged with an additional offense or offenses as a result of such act or acts.*
>
> 6. A person found to be a predatory sexual offender shall be imprisoned for life with eligibility for parole ….

---

[5] Effective January 1, 2017, the legislature transferred section 558.018 RSMo. (Supp. 2014) regarding repeat sexual offenders to the current section 566.125. S.B. 491, 97th Gen. Assem., 2d Reg. Sess. (Mo. 2014).

(Emphases added). Thus, under the plain and ordinary meaning of the statute, the sentencing enhancement under section 566.125.6, as relevant here, applies only to acts listed in subsection 1 of section 566.125, namely: (1) statutory rape in the first degree or statutory sodomy in the first degree; (2) rape in the first degree or sodomy in the first degree; (3) forcible rape; (4) forcible sodomy; (5) rape; and (6) sodomy.

We look to the history of the statute in ascertaining the legislative intent. Rape and sodomy in the first degree require that the victim be subjected to forcible compulsion or incapacitated, incapable of consent, or lacking the capacity to consent. Sections 566.030 and 566.060. Forcible rape and forcible sodomy, the respective predecessors to first-degree rape and first-degree sodomy in Missouri's criminal code, likewise required the use of forcible compulsion. *See, e.g.,* sections 566.030 and 566.060 RSMo. (1994). Before 1980, the offenses of "rape," in violation of section 566.030 RSMo. (1978), and "sodomy," in violation of section 566.060 RSMo. (1978), both required the use of forcible compulsion when the victim was age 14 or older. The statutory scheme in place before 1980 contained no other categories or levels of either rape or sodomy. *See generally* Chapter 566 RSMo. (1978). Second-degree rape, pursuant to section 566.031, and second-degree sodomy, pursuant to section 566.061, do not include the use of forcible compulsion as an element of either offense, which distinguishes these second-degree offenses from those listed in section 566.125.1(2) through (6).

In addition, the legislature transferred section 558.018 RSMo. (Supp. 2014) to section 566.125, effective January 1, 2017. Before that date, section 558.018.1 RSMo. (Supp. 2014) provided as follows:

> 1. The court shall sentence a person to an extended term of imprisonment if it finds the defendant is a persistent sexual offender and has been found guilty of attempting to commit or committing the following offenses:
>     (1) Statutory rape in the first degree or statutory sodomy in the first degree;

(2) Rape in the first degree or sodomy in the first degree attempted or committed on or after August 28, 2013;

(3) Forcible rape committed or attempted any time during the period of August 13, 1980 to August 27, 2013;

(4) Forcible sodomy committed or attempted any time during the period of January 1, 1995 to August 27, 2013;

(5) Rape *committed or attempted before August 13, 1980*;

(6) Sodomy *committed or attempted before January 1, 1995*.

(Emphases added). The legislature amended the statute to remove the date limits set forth in what are now sections 566.125.1(2) through (6). S.B. 491, 97th Gen. Assem., 2d Reg. Sess. (Mo. 2014). The phrase "committed or attempted before August 13, 1980" set forth in paragraph (5) for the offense of rape was deleted, and the phrase "committed or attempted before January 1, 1995" set forth in paragraph (6) for the offense of sodomy was likewise deleted. *Id*. The plain language of section 558.018.1 RSMo. (Supp. 2014) did not encompass second-degree rape or second-degree sodomy—which do not require the use of forcible compulsion—before the legislature transferred the statutory provision to section 566.125.1 and amended its language effective January 1, 2017.

We must give effect to the statute as written. The history of section 566.125 and its immediate predecessor along with the rules of statutory interpretation lead to the result that second-degree rape, second-degree sodomy, and attempted second-degree sodomy are not offenses covered under this section. *See Johnson*, 524 S.W.3d at 508 n.2 (noting that second-degree statutory rape was not used as predicate offense for purpose of finding defendant to be predatory sexual offender); *Green*, 597 S.W.3d at 239-40 (holding that where trial court expressed mistaken belief about sentencing requirements, appellate Court would vacate consecutive sentence imposed by trial court for second-degree sodomy and remand for resentencing).

As such, the trial court improperly sentenced Defendant to life with parole for each count

of second-degree sodomy, second-degree rape, and attempted second-degree sodomy of which the jury had found him guilty. The offenses of second-degree rape and second-degree sodomy are class D felonies. Sections 566.031 and 566.061. The authorized term of imprisonment for a class D felony is not to exceed seven years. Section 558.011.1(4). Unless otherwise provided in the statute creating the offense, an attempted offense is classified one step lower than the completed offense. Section 562.012.3. As a result, attempted second-degree sodomy is a class E felony, and the authorized term of imprisonment is not to exceed four years. Section 558.011.1(5).

"Being sentenced to a punishment greater than the maximum sentence for an offense constitutes plain error resulting in manifest injustice." *State v. Yount*, 642 S.W.3d 298, 300 (Mo. banc 2022). We find the trial court plainly erred in sentencing Defendant to a term of life imprisonment as a predatory sexual offender for each of the following ten counts: four convictions for the class D felony of second-degree rape (counts 8, 14, 15, and 17); five convictions for the class D felony of second-degree sodomy (counts 3, 9, 10, 11, and 12); and one conviction for the class E felony of attempted second-degree sodomy (count 18). The sentence of life imprisonment imposed for each of those ten counts exceeds the statutory maximum penalty for the respective offense. We grant Points 17 through 26.

*Points 27 through 40*

We next consider Points 27 through 40 because the finding that Defendant is a predatory sexual offender is integral to all of Defendant's remaining challenges on appeal. In Points 27 through 40, Defendant claims the trial court erred by sentencing him as a predatory sexual offender for each of the 16 counts of which he was convicted. Defendant contends the State failed to present sufficient evidence to prove beyond a reasonable doubt that he committed an act

37

or acts constituting a sufficient predicate against more than one victim. He argues the plain language of the predatory sexual offender statute requires that the State prove each act or acts involved *more than one victim*, not that the act or acts involved *different* victims. Defendant asserts that the latter interpretation violated his right of due process.

Defendant's challenge, while expressed as one relating to the sufficiency of the evidence, actually presents a challenge relating to statutory interpretation. Defendant acknowledges that his challenge is not preserved for review. But because he portrays his claim as a challenge to the sufficiency of the evidence, which need not be preserved under Rule 29.11(d), rather than as a challenge to the interpretation of a statute, Defendant does not request plain-error review.

"[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. When a challenge to the sufficiency of the evidence raises an issue of statutory interpretation, we conduct *de novo* review. *Dickerson*, 609 S.W.3d at 844. When interpreting a statute, we must ascertain the intent of the legislature from the language used, and if possible, give effect to that intent. *Johnson*, 524 S.W.3d at 510. We give the language used in the statute its plain and ordinary meaning. *Id.* We will not interpret statutes in ways that yield unreasonable or absurd results. *Henry*, 666 S.W.3d at 185.

The State charged Defendant as a predatory sexual offender pursuant to section 566.125. As relevant here, section 566.125 provides:

> 1. The court shall sentence a person to an extended term of imprisonment if it finds the defendant is a persistent sexual offender and has been found guilty of attempting to commit or committing the following offenses:
>> (1) Statutory rape in the first degree or statutory sodomy in the first degree;
>> (2) Rape in the first degree or sodomy in the first degree;
>> (3) Forcible rape;
>> (4) Forcible sodomy;

38

(5) Rape;

(6) Sodomy.

\*\*\*

4. The court shall sentence a person to an extended term of imprisonment as provided for in this section if it finds the defendant is a **predatory sexual offender** and has been found guilty of committing or attempting to commit any of the offenses listed in subsection 1 of this section or committing child molestation in the first or second degree or sexual abuse when classified as a class B felony.

5. For purposes of this section, a "predatory sexual offender" is a person who:
   (1) Has previously been found guilty of committing or attempting to commit any of the offenses listed in subsection 1 of this section, or committing child molestation in the first or second degree, or sexual abuse when classified as a class B felony; or
   (2) Has previously committed an act which would constitute an offense listed in subsection 4 of this section, whether or not the act resulted in a conviction; or
   **(3) Has committed an act or acts against more than one victim which would constitute an offense or offenses listed in subsection 4 of this section, whether or not the defendant was charged with an additional offense or offenses as a result of such act or acts.**[6]

6. A person found to be a predatory sexual offender shall be imprisoned for life with eligibility for parole ….

(Emphases added). The jury convicted Defendant of five counts of first-degree rape and one count of first-degree sodomy as listed in section 566.125.1. These six counts involved five different victims on five separate occasions.

Defendant argues as to all counts that the phrase "an act or acts against more than one victim" as used in section 566.125.5(3) means an act or acts committed at the same time involving more than one victim, and not an act or acts committed at different times against different victims. Defendant's argument ignores the plain and ordinary meaning of the statutory language, ignores the legislative intent of the statute, and would lead to an absurd result.

---

[6] Section 566.125.5(3) is relevant to the issue on appeal.

Defendant cites no case for the proposition that section 566.125.5(3) applies only to offenses committed against more than one victim at the same time, and our own research reveals none. Indeed, our Supreme Court has stated that "[s]ection [566.125].5(3) is unambiguous. It refers simply to 'an act or acts against more than one victim.'" *Johnson*, 524 S.W.3d at 511.[7] Unlike sections 566.125.5(1) and 566.125.5(2), the plain language of section 566.125.5(3) does not mention timing of a defendant's acts or a defendant's previous conduct. *Id*. As a result, the plain reading of the unambiguous language leads to the conclusion that a defendant can be classified as a predatory sexual offender if the defendant commits a listed offense or offenses against more than one victim, regardless of whether such conduct occurs at the same time or at different times.

Defendant cites MACH-CR 2d 2.30, section 11 to support his argument that section 566.125.5(3) applies only to offenses committed against more than one victim at the same time. Paragraph [3] of MACH-CR 2d 2.30, section 11 states that "defendant, in the course of committing the charged offense, also committed acts that would constitute the offense of … against [*Identify second victim. ...*] in that defendant [*Describe elements and conduct constituting the offense.*]." This language is inconsistent with section 556.125.5, the statutory provision defining a predatory sexual offender, and the source of the substantive law. When a conflict exists between a statutory provision and MACH-CR 2d or its notes on use, this Court follows the substantive law. *Yount*, 642 S.W.3d at 303.

Defendant's interpretation also ignores the legislative intent of section 566.125.5. With

---

[7] *State v. Johnson* considered the prior version of the statute found at section 558.018 RSMo. (Supp. 2014). Effective January 1, 2017, the legislature transferred section 558.018 to current section 566.125. S.B. 491, 97th Gen. Assem., 2d Reg. Sess. (Mo. 2014). The language of paragraph (3), however, is the same in both former section 558.018.5 RSMo. (Supp. 2014) and current section 566.125.5.

the addition of "predatory sexual offender" status in 1996, the legislature sought to expand the circumstances under which a defendant might be subject to an extended term of imprisonment. *State v. McDonald*, 626 S.W.3d 708, 713 (Mo. App. W.D. 2021). Thus, it would be illogical to limit the meaning of "predatory sexual offender" to those defendants who victimized multiple persons only when done at the same time rather than in separate incidents, no matter how many victims or how many separate incidents. To adopt Defendant's interpretation would circumvent the intent of the legislature to expand the circumstances under which a defendant might be subject to an extended term, instead narrowing the circumstances under which a defendant could be designated a predatory sexual offender subject to an enhanced sentence. *Shores v. State*, 674 S.W.3d 127, 138 (Mo. App. W.D. 2023). "Doing so would be at odds with the legislature's 'wish[ ] to expand the circumstances under which a defendant could be found to be a predatory sexual offender.'" *Id.* (quoting *McDonald*, 626 S.W.3d at 713).

Further, if the legislature intended section 566.125.5(3) to apply only when a defendant commits an act or acts against more than one victim at the same time, then the legislature would have explicitly stated that. It did not do so. *See id*. at 137 (had legislature intended section 558.018.5(1) to require that predicate offense occur before offense charged in present case, legislature would have set out that requirement). We decline to add language to an unambiguous statute to alter its plain meaning. *See Contreras-Cornejo*, 526 S.W.3d at 153 (Court may not create ambiguity where words of statute are plain). If the statute as written needs alteration, it is for the legislature, and not this Court, to alter it. *Shores*, 674 S.W.3d at 137.

Defendant seems to argue that if an assailant committed one of the listed offenses against each of two victims at the same time, the assailant would qualify as a predatory sexual offender subject to an enhanced sentence. However, if the assailant were to commit one of the listed

offenses against a different victim every day for a month, the assailant would *not* qualify as a predatory sexual offender pursuant to section 566.125.5(3), and would *not* be subject to an enhanced sentence pursuant to paragraph (3), at issue here, because the acts were committed at different times against different victims. Such an interpretation would yield an absurd result, and we will not interpret statutes in ways that yield unreasonable or absurd results. *Henry*, 666 S.W.3d at 185.

To adopt Defendant's interpretation of the phrase "more than one victim" would work against the evident purpose of section 566.125.5(3); it would impose an additional, unwritten requirement—that the offense(s) be committed at the same time; and it would lead to an absurd result. We decline to accept Defendant's urged interpretation. We further find the evidence was sufficient for the jury to find that Defendant is a predatory sexual offender. We deny Defendant's challenge to the finding that he is a predatory sexual offender pursuant to section 566.125.5(3).

## Conclusion

We reverse in part, and affirm in part. As conceded by the State, we find the trial court plainly erred in sentencing Defendant to a term of life imprisonment as a predatory sexual offender for each of the following ten counts: four convictions for the class D felony of second-degree rape (counts 8, 14, 15, and 17); five convictions for the class D felony of second-degree sodomy (counts 3, 9, 10, 11, and 12); and one conviction for the class E felony of attempted second-degree sodomy (count 18). Because section 566.125.1 does not encompass the offenses of second-degree rape or second-degree sodomy, the sentence of life imprisonment imposed for each of those ten counts exceeded the maximum sentence for the respective offense. As a result, we set aside Defendant's life sentences for counts 3, 8, 9, 10, 11, 12, 14, 15, 17, and 18, and

42

remand the cause to the trial court for resentencing for those counts only, in accordance with this opinion.[8]

The trial court's judgment is affirmed in all other respects. We affirm Defendant's conviction of all 16 counts; the life sentences imposed for the five counts of first-degree rape (counts 1, 2, 4, 5, and 6) and one count of first-degree sodomy (count 13); the imposition of consecutive sentences; and the jury's finding that Defendant is a predatory sexual offender.

_____
Angela T. Quigless, J.

Lisa P. Page, P.J. and Gary M. Gaertner, Jr., J., concur.

---

[8] At resentencing, the trial court has discretion to impose the sentences for counts 8, 9, 10, 11, 12, 14, 15, 17, and 18 either consecutively or concurrently to one another and to all other sentences. Section 558.026.1; *Contreras-Cornejo*, 526 S.W.3d. at 153. Consecutive sentencing is required, however, when multiple sentences are imposed "for any offense committed during or at the same time as" the listed sexual offenses, which listed sexual offenses include first-degree rape and first-degree sodomy. Section 558.026.1; *Contreras-Cornejo*, 526 S.W.3d. at 153. Because count 3 (second-degree sodomy) was committed at the same time as the first-degree rape charged in count 1, the sentence for count 1 must run consecutively to the sentence imposed for count 3. Section 558.026.1; *Contreras-Cornejo*, 526 S.W.3d. at 153.